44

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* JOSEPH DENTI and JOSEPH SARCINELLA, Respondents.

First Department, March 12, 1974; resettled April 11, 1974.

*Jonathan Lovett* of counsel (*Michael R. Juviler* with him on the brief; *Frank S. Hogan, District Attorney*), for appellant.

*Joel A. Brenner* of counsel (*Gilbert S. Rosenthal,* attorney), for respondents.

LANE, J. The defendants were indicted for the crime of possession of gambling records in the first degree. The defendants moved prior to trial to suppress gambling records and a quantity of United States currency. This appeal is being prosecuted by the People after the Trial Justice granted the motion to suppress.

Patrolmen Schachtel, Shanahan and Mednick were in an unmarked car, maintaining surveillance on 166th Street in Manhattan in connection with possible narcotics offenses. They observed a car with two occupants (later identified as Messrs. Ruiz and Rodriguez) driving past their location at frequent intervals. They decided to follow it and ended up driving in circles always passing the initial 166th Street location. The car finally parked and another car occupied by the two defendants pulled up alongside. Ruiz and Rodriguez entered the defendants' car. All four then drove away, followed by the police. The defendants' car was driven " erratically," with no real destination. They just drove around " in circles " until after approximately 10 minutes of driving they returned to 166th Street. The three officers then approached the car which was being driven by defendant Denti, and Patrolman Schachtel asked for Denti's license and registration. Denti did not have either and he explained that the car was owned by his wife. At this point Schachtel observed a three-inch stack of money on the front seat with newspaper around the sides. The money which was counted at the scene amounted to $9,095 in various denominations. The occupants denied any knowledge of ownership of this money. All four denied knowledge of who the owner of the first car was, as well.

At this point all four car occupants were directed to leave the car and subjected to a superficial weapons search. The four consented to go to the stationhouse for questioning and were driven in Denti's wife's car by the police to the stationhouse. As they left the car to enter the stationhouse, Patrolman Schachtel, who was sitting in the back seat during the trip to the stationhouse, noticed a piece of paper lying face up and from the visible writing recognized it to be a gambling record known as a " pay and collect slip." The dollar amount recorded on the slip added up to a total of $9,095, which corresponded exactly to the amount of money found on the front seat. All four men

were then placed under arrest for possession of gambling records. The charges against Ruiz and Rodriguez were subsequently dropped. A further search of the vehicle revealed additional slips representing another $57,000 in wagers. Subsequent to the arrest, additional money was found on the person of defendant Sarcinella.

The only testimony at the hearing was that of Patrolman Schachtel. Though the Trial Justice gave full credence to the narrative of the patrolman, he nevertheless granted the motion to suppress stating that the arrest was based on '' pure suspicion.''

A step-by-step reconstruction of the occurrence reveals that the ultimate arrest was not based on a mere suspicion or conjecture but on probable cause.

The police officers, trained to detect and, if possible, anticipate criminal activity, observed the unusual habits of the defendants and determined that they warranted scrutiny. The activities of the defendants Denti and Sarcinella cruising in circles in a high-crime area indicated a possibility that a crime was being or about to be committed. Of course, at that time they had only a mere suspicion or hunch that any wrongdoing was involved and thus had no right to make any arrest (cf. *People* v. *Arthurs,* 24 N Y 2d 688, 692).

However, the next step taken by the police was perfectly legitimate, and in conformity with the normal police duty to know what is going on in the streets; namely, checking for the registration of the vehicle and the license of the driver of that vehicle (Vehicle and Traffic Law, § 401, subd. 4; § 501, subd. 4; *People* v. *Rowell,* 27 N Y 2d 691; *People* v. *Battle,* 12 N Y 2d 866; cf. *People* v. *Amanatides,* 39 A D 2d 1010).

Once it was established that the driver had neither license nor registration, the police had a right to take them to the stationhouse for questioning (Vehicle and Traffic Law, § 423, subd. 1), especially when coupled with the '' highly suggestive '' answers given by the defendants in disclaiming ownership of the pile of money (cf. *People* v. *Rosemond,* 26 N Y 2d 101, 105).

Until this point, no arrest had taken place. Defendants had freely consented to go to the stationhouse.

The next significant occurrence was when Patrolman Schachtel, while getting out of the car at the stationhouse, saw the '' pay and collect slip '' on the floor in the back of the car. It appeared to him to be a gambling paper and his taking it was not a wrongful seizure since this contraband was in plain view of the police officer (*Harris* v. *United States,* 390 U. S. 234;

*People* v. *Battle,* 12 N Y 2d 866; cf. *People* v. *Gallmon,* 19 N Y 2d 389).

The subsequent search of the automobile and recovery of additional policy slips, made in a timely, undelayed fashion, immediately after and related to the arrest, rendered seizure of those items of contraband proper (*Cooper* v. *California,* 386 U. S. 58; *People* v. *Brosnan,* 32 N Y 2d 254, 260-261; *People* v. *Montgomery,* 15 N Y 2d 732, cert. den. 382 U. S. 853; cf. *Preston* v. *United States,* 376 U. S. 364; *People* v. *Lewis,* 26 N Y 2d 547, 552).

The search of the person of Sarcinella after the arrest was made was a reasonable incident to the arrest itself.

Analysis of the police activity in the case at bar exemplifies legal and proper police work resulting in an arrest based on probable cause.

In sum, determination of probable cause deals not with technicalities but with probabilities which must perforce include the practical and factual considerations of everyday life acted upon by reasonable and prudent men under the totality of the circumstances presented (*Brinegar* v. *United States,* 338 U. S. 160, 175).

It must further be noted that the determination at the hearing omitted any findings of fact and, upon request for such findings, the court merely stated that " the entire transcript is clear as to exactly why I made my decision. " Such a statement is not in compliance with the mandate of subdivision 6 of CPL 710.60. However, since the defendants had a full and fair hearing, the findings of fact and conclusions of law as made by this court shall constitute the findings and conclusions which should have been made by the hearing Justice (cf. *People* v. *Brady,* 16 N Y 2d 186, 189).

Accordingly, the order, Supreme Court, New York County (PECORA, J.), dated July 27, 1973, granting defendants' motion to suppress should be reversed, on the law, and the motion denied.

NUNEZ, J. P., KUPFERMAN, MURPHY and TILZER, JJ., concur.

Order, Supreme Court, New York County, entered on July 27, 1973, unanimously reversed, on the law, and the motion denied.