THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* RICHARD SYLVESTER ANDERSON, JR., Appellant.

Fourth Department, December 5, 1974.

*Charles F. Crimi* for appellant.

*Jack B. Lazarus* (*Charles R. Testa* of counsel), for respondent.

DEL VECCHIO, J.   Defendant stands convicted of murder after a trial at which the prosecution put in evidence incriminating statements by him which were obtained, the record discloses, during a period of illegal detention.   Because the statements were therefore inadmissible, the conviction must be reversed and a new trial ordered.

Without demonstrated probable cause to arrest, and as part of a round-up of close associates and friends of the victim, defendant, 21 years of age, was taken to police headquarters about 1 o'clock in the morning of November 10, 1972 — some three hours after the crime had been committed.   The police insisted that defendant go with them in the police car rather than drive his own vehicle.   On arrival at headquarters he was placed in an interrogation room where he remained for more than 19 hours until shortly after 8:20 in the evening, when he made a statement in which he confessed.   During that period he had no sleep (being roused for questioning by a detective when he rested his head on a table), was given no food except two hot dogs and coffee about 7:00 P.M., and was questioned by 9 or 10 detectives, constantly, according to defendant, or at least intermittently, according to the police officers who testified at the trial.   At 2:20 in the afternoon — after 13 hours in the interrogation room — he made an exculpatory statement, which was admitted in evidence at the trial along with his confession.   (Both these statements were found to be voluntary after a preliminary hearing, and their voluntariness was again submitted to the jury upon the trial.)

Defendant testified that while at police headquarters he " was constantly asking if I could go home or see my mother ", and that shortly before making his first statement he was told that he could see her after he had made a statement; this testimony was not controverted by the police.   One officer testified that at a time shortly after defendant had been brought to the police

station and had been questioned by him for half to three quarters of an hour, defendant was told that he could leave, but the officer admitted that he was not the one who had so informed defendant and that defendant was still at the station when the officer returned to duty a few hours later. He also testified that, although he did not believe defendant was in custody, he "doubt[ed] seriously he could have gotten up and left". Officer Sparacino, the police officer in charge of the Criminal Investigation Section, testified that if the defendant "would have wanted to leave, I may have put the charge against him right then and there" (even though he lacked probable cause to hold him).

Defendant's mother arrived at police headquarters at 8:00 A.M. and asked repeatedly during the day to see her son, but was told that he was being questioned and that she could see him when it was finished. She testified that it was not until about 9 o'clock in the evening that she was permitted to see him, although an officer said that she was allowed to speak with him for 10 to 15 minutes sometime after 4:00 P.M.

Defendant was not advised of his constitutional rights under *Miranda* v. *Arizona* (384 U. S. 436) from the time he was first brought to the police station until immediately before he gave his first statement in midafternoon; the advice was repeated before his evening statement was made.

In the circumstances here present it is obvious that, tested by what a reasonable man in defendant's situation would have believed, defendant was detained in police custody for most, if not all, of the time he was at police headquarters (*People* v. *Yukl*, 25 N Y 2d 585, 589).

So far as appears in this record, the police had no probable cause to arrest defendant during the 19 hours he was at the police station prior to his confession at 8:20 in the evening. Officer Sparacino testified that defendant did not become a suspect until a discrepancy appeared between his statement taken in midafternoon and a statement made by one of his companions who was being questioned about their activities on the previous evening. That discrepancy alone of course fell short of probable cause to arrest; that the police themselves did not consider it as such is evidenced by the fact that charges were not placed against defendant until 10:00 P.M., after he had given his confession.

Furthermore, there was no apparent justification for believing that defendant was a person "reasonably suspected of possessing knowledge of the crime under investigation" such that his

statements might be considered to have been obtained during a permissible investigative custodial questioning under *People* v. *Morales* (22 N Y 2d 55, vacated and remanded *sub nom. Morales* v. *New York,* 396 U. S. 102). Even if there had been grounds for such belief, the 13 hours of detention before defendant's first statement and 19 hours before the second statement, with all the attendant circumstances, prevented this from being a "reasonable and brief period of time for questioning under carefully controlled conditions protecting his Fifth and Sixth Amendment rights" permitted by *Morales* (22 N Y 2d, at p. 64). We must conclude therefore that defendant was illegally detained when his statements were taken at 2:20 P.M. and at 8:20 P.M., and that consequently such statements were inadmissible at the trial (*Davis* v. *Mississippi,* 394 U. S. 721; *People* v. *Herbison,* 22 N Y 2d 946; *People* v. *Young,* 35 A D 2d 1061). *People* v. *Everett* (10 N Y 2d 500), to the contrary, is no longer the law (see *Mapp* v. *Ohio,* 367 U. S. 643).

Moreover, if we were to hold, which we do not, that the illegality of defendant's detention was simply a factor to be considered in determining the voluntariness of defendant's statement, rather than rendering it inadmissible per se (see *People* v. *Pooler,* 41 A D 2d 1011, affd. 34 N Y 2d 772; *People* v. *Zakrzewski,* 36 A D 2d 646; *People* v. *Clemmons,* 32 A D 2d 936), a reversal of the conviction and a new trial would still be required. The illegality of the detention was not considered in the determinations by the court following the preliminary hearing and by the jury upon the trial that the statements had been voluntarily made, for the record discloses that neither was it argued preliminarily before the court nor was it submitted to the jury as an element to be considered by it. The failure to raise the illegality of the detention at those stages does not bar its assertion now (see *Morales* v. *New York, supra,* p. 103), and it, together with the other circumstances above cited demonstrated by the record, mandates a determination that the statements were involuntary in nature when given.

In reversing the judgment we also note the impropriety of the remarks by the prosecutor on summation by which he made himself a witness without having been sworn to testify (*People* v. *Lovello,* 1 N Y 2d 436).

The judgment should be reversed and a new trial granted.

MARSH, P. J., CARDAMONE, SIMONS and GOLDMAN, JJ., concur.

Judgment unanimously reversed on the law and a new trial granted.