THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MANLEY BENNETT, Appellant.

First Department, April 15, 1975

*Robert A. Naidus* of counsel *(William E. Hellerstein* and *William J. Gallagher,* attorneys), for appellant.

*Karen Zelfman Bell* of counsel *(Mario Merola, District Attorney),* for respondent.

MURPHY, J. Following a visit to his cousin in The Bronx, defendant and his two traveling companions, all born in Jamaica, West Indies, but then residents of Massachusetts, entered defendant's car, which was registered in and bore Massachusetts license plates, for the trip home. Two officers in a marked radio car observed defendant's car and its passengers about a minute and, although perceiving no violation of law, claimed that they nevertheless decided to stop the car for a routine license and registration check. Upon reaching the now stopped car, both officers testified to seeing an inch-long, white, thinly-rolled cigarette, crimped at one end and about one quarter to one half the diameter of a commercial cigarette, burning in an ashtray from which an odor similar to that of burning hemp emanated; which indicated to them the presence of marijuana. Officer Prakin, who conceded that his formal narcotics training did not include any demonstration as to the actual odor of cannabis, first testified that the cigarette was burning in an ashtray on the console between the bucket seats of the car, but later, after the automobile was actually viewed by the court, jurors and witnesses, acknowledged that the ashtray was, in fact, on the dashboard.

Defendant and his companions were then ordered out of the car, arrested for possession of the cigarette, and searched. (A .38 calibre revolver was found on appellant, but no further mention thereof appears in the record as to whether it was unlawfully possessed and, in any event, is not a part of this indictment.) After all three defendants were handcuffed, another unit was called to assist in transporting defendants and the car to the local precinct. While the arresting officers drove defendants to the precinct house in the police car an unknown assisting officer (whose name was never entered in either arresting officer's memo book and who never testified) drove

defendant's car from the place of arrest to the precinct house, where he left it.

Upon arrival, Officer Prakin now for the first time searched defendant's car, while his brother officer escorted the defendants into the station house. Officer Prakin allegedly found therein: a tobacco pouch on the dashboard in front of the passenger seat which contained marijuana; a brown paper bag on the floor behind the passenger seat, which contained a large black pipe, a scale and a smaller paper bag containing cannabis; and a sports jacket on the back seat containing five envelopes of the sort which could be used to package marijuana. The total amount of marijuana was three quarters of an ounce.

The alleged marijuana cigarette which precipitated the arrest was never produced because, according to the arresting officer, it had "burned itself out". (The record does not disclose how the defendants could be booked for possession of the nonexistent cigarette, but apparently the problem was solved with the new finding of marijuana after the search of defendant's car.)

Defendant and his codefendants testified on a pretrial hearing to suppress the physical evidence seized. Each claimed he had never previously been arrested and denied that any one of them had smoked a marijuana cigarette on the date of their arrest; although all three admitted prior extensive use of cannabis. All three defendants also testified that a marijuana cigarette will not burn itself out unless continuously puffed upon. The trial court refused to take judicial notice of such fact. We claim no greater expertise on the subject than the learned Trial Justice below and, in the absence of expert testimony on the matter, hesitate to offer any opinion on such issue.

Following denial of their suppression motion, all three defendants were tried and found guilty by a jury of criminal possession of a dangerous drug in the sixth degree. Appellant Bennett was sentenced to a one-year term of imprisonment; which he has already served.

Since, as above noted, the marijuana cigarette was never recovered, defendant's guilt stemmed from his alleged possession of the cannabis and related paraphernalia recovered from his car after the arrest. Such possession was established solely through the application of the statutory provision which

makes the presence of a dangerous drug (now referred to as a "controlled substance") in an automobile "presumptive evidence of knowing possession thereof by each and every person *in the automobile at the time such controlled substance was found"*. (Penal Law, § 220.25, subd 1; italics added.)

Passing for the moment the sufficiency of the evidence to establish defendant's guilt, we turn first to the propriety of the stop which preceded the arrest and subsequent search.

Though the current law governing warrantless searches and seizures of automobiles has been characterized as "something less than a seamless web" *(Cady v Dombrowski,* 413 US 433, 440), certain fundamental safeguards are still provided by the Fourth Amendment for motorists. (See Note, Warrantless Searches and Seizures of Automobiles, 87 Harv L Rev 835.)

In general, the Fourth and Fourteenth Amendments preclude warrantless searches "subject only to a few specifically established and well-delineated exceptions." *(Katz v United States,* 389 US 347, 357.) One such exception concededly concerns automobiles, because of their mobile nature. *(Carroll v United States,* 267 US 132; *Brinegar v United States,* 338 US 160.) But even the *Carroll* case *(supra),* which first established the exception to the warrant requirement in automobile cases "does not declare a field day for the police in searching automobiles. Automobile or no automobile, there must be probable cause for the search." *(Almeida-Sanchez v United States,* 413 US 266, 269.)

Despite the absence of probable cause or even sufficient reasonable suspicion to authorize a street detention *(Terry v Ohio,* 392 US 1; cf. *People v Denti,* 44 AD2d 44), the People seek to justify the police stop of the automobile under section 390 and subdivision 4 of section 401 of the Vehicle and Traffic Law which, *inter alia,* authorize inspections for overloading and require production of registration certificates and operator's licenses on demand. However, whatever doubt previously existed as to rights of a police officer in this State to arbitrarily stop a car under the guise of inspection and thereby circumvent precious Fourth Amendment rights has now been dispelled by our Court of Appeals. *(People v Ingle,* 36 NY2d 413 [April 1, 1975].) The mere fact that defendant's automobile was registered in Massachusetts, alone, was insufficient cause for the stop, particularly in the absence of any proof of "some system or uniform procedure" for checking sister State registrations. *(People v Ingle, supra.)* And since "the initial stop of

the defendant was unlawful the evidence thereafter acquired must be suppressed". *(People v Cantor,* 36 NY2d 106, 111.)

We would also reverse the instant conviction for still another reason. The cannabis and paraphernalia were discovered after defendant and his companions were removed from the car. Accordingly, application of the statutory presumption (Penal Law, § 220.25, subd 1), under such circumstances, is highly questionable.

Moreover, and even more significantly, the failure of the prosecution to call the officer who drove defendant's car to the station house broke the chain of evidence linking defendant to the contraband later found therein. Where, as here, "the evidence itself is not patently identifiable or is capable of being replaced or altered, admissibility generally requires that all those who handled the item 'identify it and testify to its custody and unchanged condition'". *(People v Connelly,* 35 NY2d 171, 174.)* The testimony of this officer was a necessary link and the failure to produce him broke the chain of custody. The People failed to show that the defendants were in the vehicle at the time the substance was found or that the vehicle's contents were substantially unchanged from the time defendants occupied it until the subsequent search at the station house.

In light of the foregoing, the judgment of Supreme Court, Bronx County (SCHWARTZ, J.), rendered January 19, 1973, should be reversed, on the law, and vacated, the order of said court denying defendant's suppression motion should be reversed, on the law, and granted and the indictment dismissed.

STEVENS, P.J., LUPIANO, CAPOZZOLI and LANE, JJ., concur.

Judgment, Supreme Court, Bronx County, rendered on January 19, 1973, unanimously reversed, on the law, and vacated, the order of said court entered on or about November 8, 1972, denying defendant's suppression motion, unanimously reversed, on the law, the motion granted, and the indictment dismissed.