THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v BEVERLY M. MAIER, Respondent.

First Department, April 17, 1975

*Kenneth P. Kolson* of counsel *(Lewis R. Friedman* with him on the brief; *Robert M. Morgenthau, District Attorney)*, for appellant.

*Robert I. Kalina* for respondent.

LANE, J. The defendant, Beverly M. Maier (Maier), together with Allen Weiner (Weiner), was observed standing near a construction site on 92nd Street and Third Avenue by Patrol-

men Giannelli and Claus who were patrolling in civilian clothes in an unmarked car. Both Maier and Weiner were thin, drawn, and dirty, and had the general appearance of narcotics addicts. The area had several methadone centers and many thefts had recently been perpetrated in that area.

Weiner, while still under observation by the officers, crossed and recrossed Third Avenue and then began to wave his hands. A yellow Hertz van pulled up on the east side of the street and Weiner and Maier went over and had a brief conversation with the driver. The driver left and Weiner and Maier entered the van. The van, driven by Weiner, continued northbound and stopped for a red light at the corner of 93rd Street.

The van made a left turn onto 93rd Street while the light was still red. The police followed, and when the van stopped at 93rd and Madison Avenue for a light, Patrolman Giannelli walked toward the van on the driver's side exhibiting his shield. When Weiner, looking through his sideview mirror, saw the policeman approaching, he accelerated the van, went through the red light, and drove northbound on Madison Avenue at a speed of 40 to 50 mph. The van went through another red light and then stopped between 96th and 97th Streets in the left traffic lane. Both Weiner and Maier left the van and began running. Maier was overtaken a few feet away from the van and was told, "We are the Police, stop". She continued to walk northbound after Patrolman Giannelli left her side to run after Weiner. His partner, Claus, following in the patrol car, stopped Maier on the corner and directed her to enter.

Weiner, after apprehension, was given his *Miranda* warnings and was asked what he was doing with the van. He replied that he had been paid $300 to drive the van to the West Side. He could not produce a driver's license or a registration card for the van.

When the police returned to the van, its door on the driver's side was open, its motor was running, and it was obstructing traffic.

The van was moved by Patrolman Giannelli to avoid traffic obstruction. He also looked for the registration of the vehicle but could not find it.

During this time, Giannelli noticed a heavy odor of marijuana emanating from boxes in the unpartitioned rear of the van. Both Weiner and Maier were then arrested and they and

the van were taken to the stationhouse where the van was vouchered. An inventory of the items in the van disclosed, *inter alia,* 403 pounds of marijuana in the boxes in the rear of the van.

After a hearing on the motion to suppress the contraband seized, the Trial Judge denied the motion as to Weiner and granted the motion as to Maier. The court found that Maier had not abandoned the van and that no legal basis or exigent circumstance was present to justify the warrantless search of the van. As to Weiner, the court found that he abandoned the van and had no standing to challenge the search. The People have appealed from so much of the order as granted Maier's motion to suppress the physical evidence seized.

The hearing on the motion to suppress consisted solely of the testimony of Patrolmen Giannelli and Claus, and the clear inference from the evidence elicited is that both Maier and Weiner abandoned the vehicle and, consequently, had no standing to challenge the seizure of the van (cf. *People v Pittman,* 14 NY2d 885).

However, even assuming that Maier did not abandon the van, we would still find that the motion was improvidently granted.

When Patrolman Giannelli returned to the van, with its motor still running, he had a duty to remove it from the line of traffic and it was also proper for him to look for the registration papers (Vehicle and Traffic Law, § 401, subd 4; cf. *People v Battle,* 12 NY2d 866; *People v Denti,* 44 AD2d 44, 46).

The initial intrusion into the privacy of the van was for a lawful purpose (Vehicle and Traffic Law, § 401, subd. 4; *People v Rowell,* 27 NY2d 691; cf. *Harris v United States,* 390 US 234, 235; *Cooper v California,* 386 US 58; *Cady v Dombrowski,* 413 US 433).

We recognize that the words "automobile," "motor vehicle" or "van" are not "talism[e]n in whose presence the Fourth Amendment fades away and disappears" *(Coolidge v New Hampshire,* 403 US 443, 461). However, the right to search an automobile without a warrant proceeds on the theory that: "The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law" *(Carroll v*

*United States,* 267 US 132, 158–159 [cited with approval in *Chambers v Maroney,* 399 US 42, 49]).

In the case at bar, Giannelli, after entering the car to retrieve the registration, smelled the unmistakable odor of marijuana *(People v Reisman,* 29 NY2d 278, 284) and was justified in taking the van to the stationhouse at that point *(Chambers v Maroney,* 399 US 42; *Cady v Dombrowski,* 413 US 433, *supra; People v Reisman, supra,* p 284; *People v Brown,* 28 NY2d 282).

In sum, there was independent probable cause to seize the automobile which justified the subsequent search *(People v Singleteary,* 35 NY2d 528; *People v Fustanio* 35 NY2d 196, 199; *People v Perel,* 34 NY2d 462, 466; *People v Brown, supra,* p 286; *Carroll v United States,* 267 US 132, *supra; Chambers v Maroney, supra).*

*Cady v Dombrowski (supra,* pp 446–447) teaches us that the "automobile exception" allowing warrantless seizures carved out in the previously mentioned cases has not been vitiated by *Coolidge v New Hampshire* (403 US 443, *supra)* but, to the contrary, is still vibrant and viable.

We must conclude that in whichever way the facts of this case are parsed—by a finding of abandonment or of independent probable cause — the inexorable conclusion is that the evidence seized was properly admissible in evidence against both Maier and Weiner.

Accordingly, the order of the Supreme Court, New York County, entered May 2, 1974, granting the motion to suppress as to defendant Maier, should be reversed on the law and on the facts, insofar as appealed from and the motion denied.

STEVENS, P. J., KUPFERMAN, MURPHY and LYNCH, JJ., concur.

Order, Supreme Court, New York County entered on May 2, 1974, insofar as appealed from, unanimously reversed, on the law and on the facts, and the motion denied as to defendant-respondent.