THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANK SIMONE, Also Known as GERALD CHRISTY, Appellant.

First Department, July 10, 1975

*David J. Gottlieb* of counsel *(William E. Hellerstein* and *William J. Gallagher,* attorneys), for appellant.

*Kenneth P. Kolson* of counsel *(Peter L. Zimroth* and *Robert M. Pitler* with him on the brief; *Robert M. Morgenthau, District Attorney),* for respondent.

LUPIANO, J. On August 21, 1972, defendant's car was stopped by a police officer for a "routine" license and registration check. Defendant handed the officer a forged driver's license and could not produce a registration for the car. He was arrested and searched. A loaded revolver was found in his coat pocket and illegal drugs were found in his car. After defendant's motion to suppress the forged driver's license, the loaded revolver, and the drugs, was denied, he pleaded guilty to possession of a weapon as a felony (Penal Law, § 265.05) in satisfaction of all counts of the indictment.

The critical issue on this appeal is whether the stopping of defendant's automobile for a "routine" license and registration check *on August 21, 1972,* was illegal, thereby mandating that the physical evidence seized as a consequence be suppressed. On April 1, 1975, the Court of Appeals announced that although section 390 of the Vehicle and Traffic Law "has been read as authorizing stops for 'routine traffic checks'

without further elaboration (see *People v Rowell*, 27 NY2d 691; *People v Fidler*, 280 App Div 698, 700–703)" and "[w]hatever the validity of *Fidler* in its day * * * section 390 may not be read to authorize a stop by the shibboleth of a 'routine traffic check', if such a stop is gratuitous, arbitrary,. and without justification or excuse to support even that limited intrusion on movement on the highways" *(People v Ingle,* 36 NY2d 413, 417–418). If *Ingle* is retroactively applied to the instant matter, then reversal and dismissal of the indictment is warranted unless some factual basis can be adduced to support the stop for a "routine traffic check". It is noted that in enunciating the rationale of *Ingle,* Chief Judge BREITEL aptly observed (p 420): "an actual violation of the Vehicle and Traffic Law need not be detectable. For example, an automobile in a general state of dilapidation might properly arouse suspicion of equipment violations. All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity. It is enough if the stop is based upon 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion' ".

On this appeal, this court is for the first time *directly* presented with the issue of retroactive application of the *Ingle* decision. The People counter defendant's reliance on *Ingle* with the argument that the principle set forth therein should have only prospective application. In *Stovall v Denno* (388 US 293, 298 [1967]) the United States Supreme Court noted that new principles in criminal law should be given retroactive application only when they affect the most critical element of justice, viz., the "truth-determining process". It was pointed out that retroactive effect had been given to "rules of criminal procedure fashioned to correct serious flaws in the fact-finding process at trial". Thus, errors impinging upon the basic question of whether the defendant is actually guilty are eminently susceptible of correction retroactively. In the instant matter, we are initially and solely concerned with whether the defendant is shielded from conviction because the police power purportedly violated some constitutional right of the accused in obtaining the evidence against him. The exclusionary rule, which defendant seeks the benefit of in moving to suppress the evidence, is concerned, in this context, not with defendant's guilt, but with the "guilt" of the police authorities. It would take volumes to list all the cases where defendants have obtained reversals of their convictions, not because they

were innocent, but because the evidence necessary to convict them had been ruled inadmissible.

At the time of the "routine traffic check" herein, the conduct of the police was authorized by section 390 of the Vehicle and Traffic Law and the cases impliedly, if not explicitly, sanctioning such reliance (see *People v Rowell,* 27 NY2d 691 [1970]). In *People v Rowell (supra)* the police in consequence of a "routine traffic check", fortuitously observed a quantity of glassine envelopes on the floor of the vehicle, later identified as heroin. The Appellate Term's finding that the police had a clear right to stop the vehicle necessitated defendant's argument in the Court of Appeals that the police had used their limited right to stop the vehicle as a pretext to examine its interior. The Court of Appeals affirmed. In light of *Rowell,* it is clear that in *Ingle,* the Court of Appeals issued a new, restrictive interpretation of section 390 of the Vehicle and Traffic Law. At the suppression hearing herein, the court was asked to take judicial notice of this statute. The officer also testified that he was assigned to the City Wide Auto Crime Unit to patrol the 19th and 23d precincts and had as his duties "check auto stops, checking vehicles and the driver's licenses". It is beyond cavil that the officer was acting in accordance with the law as it stood at the time of his stopping defendant's vehicle.

Recognizing that the court may *in the interest of justice* make the rule concerning constitutional claims prospective where the exigencies of the situation require such an application, the United States Supreme Court declared: "The criteria guiding resolution of the question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards" *(Stovall v Denno, supra,* p 297). Applying the above criteria to *Ingle* , it is clear that the new standard (interpretation) announced is designed to safeguard the right of the citizenry in general not to be subjected to stops merely at the whims of the police authorities. It is equally clear that the police theretofore relied entirely upon the apparent authority afforded by the Vehicle and Traffic Law. Moreover, the police were entirely justified in that reliance. The plain wording of the statute clearly afforded general authorization to stop any car on a public highway for a check of license and registration, and this apparent statu-

tory authorization must be viewed in the context of the acceptance of same by pre-*Ingle* courts. The final criterion is the effect upon the administration of *justice* of retroactive application of the new standard. It is not difficult to conceive of retroactive application of the *Ingle* standard resulting in the release of persons who were stopped by police officers acting within their authority as that authority had been explained to them by both the Legislature and the courts up to April 1, 1975. In light of the fact that the new standard has no relation to the "truth-determining process" and in no way involves the question of whether a defendant is in fact guilty of a criminal offense, retroactive application should be eschewed (see *Desist v United States,* 394 US 244 [1969], cf. *People v Huntley,* 15 NY2d 72 [1965] applying rationale of *Jackson v Denno,* 378 US 368 [1964]).

There are numerous examples where a change of standards or rules predicated on constitutional issues in the criminal justice area has been denied retroactive application. For example, although the United States Supreme Court in *Taylor v Louisiana* (419 US 522), held that the systematic exclusion of women from petit juries is unconstitutional, that court, one week later, refused in *Daniel v Louisiana* (420 US 31, 32, 33), to grant retroactive applicability to this standard. The court declared that it would not undermine the reliance of law enforcement officials on prior Supreme Court decisions in structuring their criminal justice systems, since retroactive application of *Taylor* would do little to "vindicate the Sixth Amendment interest at stake and would have a substantial impact on the administration of criminal justice in Louisiana and in other States whose past procedures have not produced jury venires that comport with the requirement enunciated in Taylor". Subsequently, we adopted the rationale of *both Taylor* and *Daniel* in cases involving grand juries *(Matter of Alessi v Nadjari,* 47 AD2d 189). Further, in *Johnson v New Jersey* (384 US 719), the United States Supreme Court held the rules promulgated in *Escobedo v Illinois* (378 US 478), and *Miranda v Arizona* (384 US 436) to be applicable prospectively ("We hold that *Escobedo* affects only those cases in which the trial began after June 22, 1964, the date of that decision. We hold further that *Miranda* applies only to cases in which the trial began after the date of our decision one week ago") *(Johnson v New Jersey, supra,* p 721). In *Linkletter v Walker* (381 US 618), the Supreme Court declined to apply retroac-

tively the rule laid down in *Mapp v Ohio* (367 US 643). Analysis of the aforesaid cases demonstrates the acumen and relevance of Chief Justice WARREN'S observation that in instances where retroactive application was given effect, such conclusion "was justified because the rule affected 'the very integrity of the fact-finding process' and averted 'the clear danger of convicting the innocent.' *Linkletter v Walker,* 381 US, at 639; *Tehan v Shott,* 382 US, at 416. We here stress that the choice between retroactivity and nonretroactivity in no way turns on the value of the constitutional guarantee involved * * * We also stress that the retroactivity or nonretroactivity of a rule is not automatically determined by the provision of the Constitution on which the dictate is based. Each constitutional rule of criminal procedure has its own distinct functions, its own background of precedent, and its own impact on the administration of justice, and the way in which these factors combine must inevitably vary with the dictate involved" *(Johnson v New Jersey, supra,* pp 727–728).

This court is not constrained by the decision in *People v Bennett* (47 AD2d 322) to view the standard enunciated in *Ingle* as mandating retroactive application. In that case the issue of retroactive application of *Ingle* was not raised and thus was not directly considered. To reiterate, for the first time on the instant matter this court is confronted directly with the issue of retroactive application of *Ingle.* Secondly, there are numerous bases advanced in *People v Bennett* for reversal, only one of which concerned the legality of the initial stop of that defendant's automobile and inferentially encompassed the retroactive aspect of *Ingle now directly raised before this court.* To the extent therefore that our opinion in *People v Bennett* may be construed as sanctioning retroactive application of the *Ingle* doctrine, we depart therefrom. Thirdly, the facts and circumstances underlying the initial stops in *Ingle, Bennett* and in the instant matter are different, susceptible of divergent interpretation and analysis, prompting substantive, albeit technical and semantical differentiation.

In any event, assuming retroactive application of the *Ingle* rule, the circumstances herein would mandate on the record, at most a remand for a further hearing. The officer herein had a specific assignment which directly encompassed the inspection of motor vehicles and licenses. Of great relevance is the fact that defendant produced an apparently forged driver's

license and failed to present a registration for the vehicle. It is within the realm of reason, to conjecture that the officer may well have stopped the defendant's automobile due to some irregularity or suspicious circumstance or because of some uniform procedure adopted with respect to halting vehicles. In essence, assuming the retroactivity of *Ingle,* inquiry must be made as to whether the *Ingle* standard had, in fact, been complied with.

Finally, it is noted that the rationale delineated herein to the effect that retroactivity is not warranted is remarkably mirrored by a most recent United States Supreme Court decision, to wit *United States v Peltier* (422 US 531).

Accordingly, the judgment of the Supreme Court, New York County (SUTTON, J.), rendered December 21, 1973, convicting defendant, upon a plea of guilty, of possession of a weapon as a felony and sentencing him to a maximum of four years, should be affirmed.

MURPHY, J. (dissenting). Since the People virtually concede the applicability of *People v Ingle* (36 NY2d 413) and *People v Bennett* (47 AD2d 322) to the facts of this case (a "routine" stop of defendant's automobile for license and registration check and the subsequent discovery of a revolver and drugs), the sole question pressed by respondent on this appeal is whether the holding in *Ingle* should be applied prospectively only. Though recognizing that *Bennett* (which was *sub judice* when *Ingle* was decided) applied the same rule to pre-*Ingle* facts, respondent requests us to now consider, or reconsider, the retroactivity issue, since it has not been heretofore specifically briefed or argued.

We find no merit in the contention that *People v Ingle (supra)* should be applied prospectively only.

Despite respondent's assertion to the contrary, the decision in *Ingle* involved no "fundamental change in constitutional interpretation." *(People v Kaiser,* 21 NY2d 86, 97.) No governing case was explicitly overruled, nor was any statute declared unconstitutional. (Cf., e.g., *Linkletter v Walker,* 381 US 618, holding *Mapp v Ohio,* 367 US 463, prospective, where *Mapp* overruled *Wolf v Colorado,* 338 US 25; *Williams v United States,* 401 US 646, holding *Chimel v California,* 395 US 752, prospective, where *Chimel,* explicitly overruled *United States v Rabinowitz,* 339 US 56, and *Harris v United States,* 331 US

145; *People v Kaiser, supra,* and *Kaiser v New York,* 394 US 280, holding *Berger v New York,* 388 US 41, prospective, where *Berger* invalidated the New York wiretap statute.) Instead, *Ingle* merely applied the dictates of *Terry v Ohio* (392 US 1) to "routine" traffic stops. Such stops are still permitted if based upon uniform procedures or a minimal degree of suspicion of a vehicle violation. All that is interdicted is a stop which is "gratuitous, arbitrary, and without justification or excuse". *(People v Ingle, supra,* p 418.)

Concededly, as Chief Judge BREITEL acknowledged in *Ingle,* there are cases which construed the statutes invariably relied upon for the seizure (Vehicle and Traffic Law, §§ 390 and 401, subd 4) as authorizing "routine traffic checks." However, he noted that in most of them there was justification for the stop irrespective of the statute, or a concession of the right to the stop, or the underlying ruling was predicated on the now discarded classification previously given to the State's permission to drive on its public highways. *(Id.,* pp 416–417.)

Moreover, even if we assume, *arguendo,* that *Ingle* pronounced a fundamental change in criminal law, we are not obliged to apply the change only to cases in which the trial begins after April 1, 1975 (the date of the decision in *Ingle).* The instant case does not involve application of a new decision by the United States Supreme Court (cf. *People v Bush,* 33 NY2d 921) or an attempt to collaterally attack a final judgment (cf. *People ex rel. Cadogan v McMann,* 24 NY2d 233). The case at bar is still in the appellate process; and "it is the general rule that we give effect to the law as it exists at the time of our decision". *(People v Loria,* 10 NY2d 368, 370; *Kelly v Long Is. Light. Co.,* 31 NY2d 25, 29, n 3; *People v Morales,* 37 NY2d 262.)

Accordingly, the judgment of conviction should be reversed and vacated, the order denying defendant's motion to suppress should be reversed and granted and the indictment dismissed.

MARKEWICH, J. P., and TILZER, J., concur with LUPIANO, J.; KUPFERMAN and MURPHY, JJ., dissent in an opinion by MURPHY, J.

Judgment, Supreme Court, New York County, rendered on December 21, 1973, affirmed.