■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v KENNETH ARNOLD YARTER, JR., Respondent.—Appeal from an order of the County Court of Washington County, entered July 7, 1975, which granted a motion by defendant to suppress evidence. On Monday, July 22, 1974, Susan Carmel Zanta, aged 16, was discovered to be missing from a camp at Cossayuna Lake, in the Town of Argyle, Washington County, where she had been visiting. That evening, a missing person investigation by the Washington County Sheriff's Department and the New York State Police was commenced. On Thursday, July 25, 1974 at about 3:00 P.M., the defendant, Kenneth Yarter, was approached by Bureau of Criminal Identification Investigators Joseph Lewis and Robert Sanderson, who asked him to accompany them a short distance to their command post at Cossayuna Lake. The reason given was that the officers had heard that the defendant had seen

Susan Zanta the previous Sunday morning. The defendant at first objected, but subsequently agreed and was taken to the command post. He remained there from about 3:00 P.M. to 8:00 P.M., during which time he was interviewed by several investigators. During his initial questioning at the command post by Investigator Sanderson, defendant made a statement, subsequently reduced to writing, which indicated that he had seen Susan Zanta and one David Cole at his residence on Sunday evening, July 21, 1974. The statement further detailed the defendant's activities that evening and the next day. The defendant was then interviewed at the post by Investigator Phelan from about 4:15 P.M. to 7:30 P.M. and submitted to a polygraph examination conducted by Phelan, after signing a permission form. On the basis of the polygraph test, Phelan concluded that the defendant had information concerning the whereabouts of Susan Zanta. The County Court has found that defendant's submission to the polygraph examination was voluntary. At approximately 8:00 P.M. on July 25, the defendant was transported by Investigators Lewis and Denio from the command post to the State Police Barracks at Salem, New York, where he was kept until approximately 11:00 P.M. Questioned by Lewis and Denio, defendant made a statement that Susan Zanta came to him Sunday evening, July 21, and said she wanted to run away. The statement further indicated that defendant agreed to meet her the next day, that he met her at approximately 2:00 to 2:30 P.M. on July 22 at a designated store and drove her to Route 40, where she got out and that he last saw her hitchhiking south, supposedly to visit friends in Schenectady, although he allegedly stated first that she indicated she was going to Saratoga and Montreal. The defendant was then taken from the Salem substation at 11:00 P.M. to the headquarters at Loudonville, and on the way, they picked up sandwiches which were eaten at Loudonville upon their arrival at about 12:30 A.M. on the morning of July 26, 1974. Under interrogation by Investigator Weise, the defendant began at about 2:00 A.M. to make oral admissions, which were reduced to writing at about 4:00–4:30 A.M. Defendant was then arrested at about 4:30 A.M. on July 26. He remained with several investigators until approximately 10:30 A.M., July 26, when he was taken to the office of Dr. Charles Cole for an examination, which was conducted in the presence of Investigators McCabe and Sanderson. Eventually, between 11:00 A.M. and 12:00 noon on July 26, defendant was taken to Greenwich Village Justice Loris Thompson, before whom he was arraigned. He was then transferred to the Washington County Correction Facility in Salem. Following defendant's indictment at the September 1974 Term of the Washington County Grand Jury for murder, rape in the first degree, rape in the third degree and criminal possession of a controlled substance, defendant moved pursuant to CPL 710.20 for an order to suppress written and oral statements made by defendant to the State Police, and certain physical evidence obtained by them as a result of such statements. Defendant complained that he was continuously interrogated, not allowed to sleep, not adequately fed, denied counsel, and beaten and kicked to the point where he made an involuntary and false statement concerning Susan Zanta's death. It is urged by the defense that there are a number of discrepancies between defendant's admissions and the alleged true facts of the manner and place of commission of the crime. We need not discuss the merits of this claim for purposes of this appeal. A number of officers of the State Police testified at the suppression hearing, and all denied having inflicted or witnessed any physical abuse upon defendant. Defendant testified that he was punched in the head, bloodying his nose, by an officer who had not testified and whom he could not identify, and that later on four or

five men out of uniform, some of whom he physically described but whom he could not identify and who had not testified, had taken turns, in teams of two, holding his hair and punching and kneeing him. He admitted that he had not been struck by any of the officers who did testify. Investigator Lewis testified that defendant's nose was bleeding during the trip from the arraignment court to the Washington County Jail. Ralph Yarter, the defendant's brother, and a Washington County Deputy Sheriff, as well as two other deputies, Spezio and Deyette, all testified that defendant had black and blue marks on his back when they saw him at the Washington County Jail on July 26 and 27. Dr. Felmly, the Washington County Jail physician, examined the defendant on July 27 and noted in the jail log that defendant had many discolored marks of assorted sizes on his body. Dr. Young examined the defendant at the jail on July 29 and found multiple contusions in the area of the left groin, shoulder blade and right knee. However, Dr. Cole, who examined defendant prior to arraignment, found no such marks or bruises. The prosecution, through cross-examination of the defendant and the testimony of other witnesses, raises the suggestion that these injuries may have been self-inflicted after defendant's arrest or the result of an accident suffered by defendant at an earlier time. All three doctors indicated that defendant's injuries could be consistent with a history of beating as well as with other causes. No citation of authority is required for the proposition that the burden of proving the voluntariness of a confession rests with the People. The County Court, in granting the motion to suppress, noted the evidence of physical abuse but made no actual findings of fact one way or the other on this issue. Instead, the court found that while defendant had voluntarily submitted to a polygraph test, his "statements after he was taken from the Cossayuna command post should be suppressed as the result of coercion by attrition on examination of the totality of circumstances." Moreover, in so doing the court gave inordinate weight to the delay in arraignment following the confession. Such postconfession delay has no direct bearing upon voluntariness (*People v Kenyon,* 35 AD2d 749), except insofar as in the present case events occurring during that period of delay may corroborate other facts. This would ordinarily leave for our consideration the question of whether a finding of involuntariness would be warranted based on the delay prior to the statement, but such an inquiry could only be made by ignoring the issue which should have overwhelming significance, to wit, whether defendant was in fact subject to physical abuse. If this question had been resolved by the County Court in defendant's favor, no other criteria would need be considered, but since the issue has not been decided we are of the opinion that determination of this appeal should be withheld. CPL 710.60 (subd 4) mandates the court hearing a motion to suppress to "make findings of fact essential to the determination" of issues raised by the motion. Accordingly, the action should be remitted to the hearing court for the purpose of rendering written findings on the issue of whether the defendant was subjected to physical abuse. A further hearing is not required. Determination of appeal withheld, and matter remitted to the County Court of Washington County for the making of further findings. Greenblott, J. P., Koreman and Reynolds, JJ., concur; Sweeney and Main, JJ., dissent and vote to affirm in the following memorandum by Sweeney, J. Sweeney, J. (dissenting). We are unable to agree with the majority that a resolution of this appeal necessitates a remittal to the County Court for a specific finding on the issue of physical abuse. While the record is lengthy, the issue to be decided is a narrow one and the applicable law firmly established. In our view, the question is whether on

this record the County Court could, from a consideration of the totality of the circumstances, properly conclude that the People failed to meet their burden of establishing voluntariness beyond a reasonable doubt. In determining this question our review is limited to whether there is sufficient evidence to support the County Court's conclusion. *(People v Boone,* 22 NY2d 476.) The question is one of law. *(People v Leonti,* 18 NY2d 384.) The majority has amply narrated the pertinent facts. The majority concludes that the County Court gave inordinate weight to the delay in arraignment following the confession and that CPL 710.60 mandates findings of fact. While this statute does require the court to make findings of fact essential to its determination, the failure to do so does not preclude appellate review where, as here, the question is one of law (see, e.g., *People v Russo,* 45 AD2d 1040; *People v Denti,* 44 AD2d 44). The requirement, in our view, is satisfied if the court recites the facts upon which it relied in granting or denying the motion *(People v Manguso,* 24 AD2d 539; *People v Ingram,* 23 AD2d 882). Clearly such practice was followed here. Although the County Court may have given significant weight to the postconfession delay in arraignment, a reading of its decision demonstrates that the court applied the test of "the totality of the circumstances" (see *People v Chaffee,* 42 AD2d 172, 173), and that it concluded the defendant's statement was the result of coercion by attrition (see *People v Holder,* 45 AD2d 1029). Undoubtedly a finding that defendant was subject to physical abuse would conclude the matter (see *People v Valerius,* 31 NY2d 51); it does not follow, however, that absent such a specific finding this court may not review all the evidence to determine whether the totality of the circumstances leaves a reasonable doubt as to the voluntariness of the statements. The essential point is that the testimony of the doctors and the members of the Sheriff's department creates a reasonable doubt concerning voluntariness, not whether it proves conclusively that there was physical abuse. The record reveals that defendant was detained for some 12 hours before the inculpatory statements were made, was continuously moved about and interrogated by different officers, had little rest or food and no contact with his family or the public, and was subjected to the possible psychological impact of the polygraph examination. More importantly, the testimony is overwhelming that defendant had bruises and marks consistent with his claims of beatings, which were unexplained by the People. Furthermore, the voluntariness is questionable because of the unusual situation that many of the facts set forth in the confession are concededly not true. Since the record establishes these facts, there is no need for remittal for further conclusions. Collectively these factors constitute sufficient proof to substantiate the County Court decision that voluntariness was not proved beyond a reasonable doubt *(United States ex rel. Wade v Jackson,* 256 F2d 7; *People v Anderson,* 46 AD2d 150; *People v Holder,* 45 AD2d 1029, *supra),* and the decision should be affirmed.