**UNITED STATES of America**

v.

**Christopher ROSARIO, Defendant.**

**No. 76 Cr. 87–CLB.**

United States District Court,
S. D. New York.

May 18, 1976.

---

5. *See Brandt v. Hickel, supra,* at p. 57.

Robert B. Fiske, Jr., U. S. Atty. by James Moss, Asst. U. S. Atty., New York City, for Government.

Messinger, Alperin & Hufjay by Lewis E. Alperin, New York City, for defendant.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

By a single count Information filed in this Court January 26, 1976, upon his waiver of indictment, defendant is charged with knowing and wilful concealment and possession with intent to defraud, on August 8, 1975 of nine (9) counterfeit $50.00 Federal Reserve Notes. Defendant has moved to suppress the notes, which were seized from his person by a New York City traffic patrolman, incident to an arrest without a warrant under circumstances described below. A suppression hearing was held before me on March 3, 1976.

On August 8, 1975, shortly after 10:00 P.M. in a quiet area of the South Bronx, Patrolman Boyle and Sergeant Rosenzweig were operating a marked New York City police van. They observed defendant driving towards them in a 1974 white Cadillac. Observing that there was no front license plate and no inspection sticker on the windshield, they made a U-turn in order to follow the Cadillac and place it under surveillance. They then noted a Pennsylvania license plate on the rear of the vehicle and further observed that the Cadillac was being operated in an unusually slow and cautious manner. They also noted that the car being operated by the defendant followed a circuitous route, travelling seven blocks to cover five. Cf. *United States v. Tramunti,* 377 F.Supp. 1 (S.D.N.Y.1974), aff'd. 513 F.2d 1087 (2d Cir.), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975).

Patrolman Boyle testified that while making one of several turns at the various intersections traversed along its circuitous route, the Cadillac failed to signal. I decline to so find. It is not that I believe that the witness Boyle intentionally falsified his testimony. However, that the claimed failure to signal is not corroborated by any contemporaneous memorandum made by the officers in their notebooks or elsewhere. They did not accuse the defendant of this traffic infraction when stopping him; nor was any summons ever issued, or any complaint or affidavit ever filed against the defendant for failing to signal.

■ But stop him they did, and they then proceeded to ask him for the vehicle's registration and his operator's license. I find that there was a sufficient factual basis to justify an investigative stopping of the vehicle to ask for the registration of the car and the driver's license. This issue is regulated for our purposes by current federal case law. See *Elkins v. United States,* 364 U.S. 206, 224, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669, 1681 (1960); *Preston v. United States,* 376 U.S. 364, 366, 84 S.Ct. 881, 882, 11 L.Ed.2d 777, 779 (1964); *United States v. Burke,* 517 F.2d 377 (2d Cir. 1975).

The Court also believes that the stop was authorized under state law. Section 401(4) of the New York Vehicle and Traffic Law requires any motorist to produce, upon demand of a police officer, the registration

certificate of the automobile that he is driving. The New York Court of Appeals has recently stated that by necessary implication, this statute has been read to authorize stops for "routine traffic checks." *People v. Ingle,* 36 N.Y.2d 413, 416, 369 N.Y.S.2d 67, 330 N.E.2d 39 (1975); *see also People v. Denti,* 44 A.D.2d 44, 353 N.Y.S.2d 10 (1st Dept.1974). Limitations engrafted on that authority by the New York courts, *e. g. People v. Ingle, supra,* seem to have been satisfied. Perhaps the clearest and most authoritative statement in this ever-changing area of the law is Chief Judge Breitel's holding in *Ingle* that " . . . an arbitrary stop of a single automobile for a purportedly 'routine traffic check' is impermissible, unless the police officer reasonably suspects a violation of the Vehicle and Traffic Law." *Id.* 36 N.Y.2d at 419, 369 N.Y. S.2d at 74, 330 N.E.2d at 43. Within these limitations, he went on to emphasize that:

> "the factual basis required to support a stop for a 'routine traffic check' is minimal. An actual violation of the Vehicle and Traffic Law need not be detectable. . . . All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity. It is enough if the stop is based upon 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion' (*Terry v. Ohio,* 392 U.S. 1, 21, [88 S.Ct. 1868, 1820, 20 L.Ed.2d 889] *supra* )."

The stop here was not arbitrary in the sense of *People v. Bennett,* 47 A.D.2d 322, 366 N.Y.S.2d 639 (1st Dept.1975), or *People v. Bergers,.* Sup., 377 N.Y.S.2d 67 (1st Dept. 1975); rather, there was reasonable cause to suspect that the car was unregistered or stolen, or the driver unlicensed.

In any event, it matters not whether we accept defendant's contention that the stopping of the vehicle to ask for a registration under these circumstances violates state law or New York judicial decisions. New York courts can be as favorable as they want towards criminals. Whether evidence must be suppressed in a federal prosecution is tested only by federal constitutional standards as enunciated and changed from time to time by federal courts. The sole purpose of suppressing the truth in this Court is to add vitality to federal constitutional policies, not to enforce co-ordinate state policies.

Finding that the officers made a lawful investigative stop of the vehicle, we continue with the events following therefrom. When asked to produce the vehicle registration stub, defendant failed to do so. He stated that he had borrowed the car. When asked to show his driver's license, he produced a license which had been issued to Victor Cruz. He also showed the officers a Bill of Sale, allegedly for the white Cadillac, which named Francisco Rosario as the purchaser. The vehicle identification number on the Bill of Sale did not match the number which was visible through the front window of the Cadillac which the defendant had been driving.

When asked to give his address, the defendant stated a street number which was immediately recognized by Patrolman Boyle as non-existent and whose location, if it had existed, would have been in the middle of the East River.

■ Failure to produce a valid registration creates a rebuttable presumption of operating an unregistered vehicle in violation of New York Vehicle and Traffic Law § 401(4). At this point I find that the defendant was placed under arrest. A search of the vehicle was then conducted by Sergeant Rosenzweig. A marihuana cigarette was found in a crumpled cigarette pack. Also seized were two tinfoil packets, one allegedly containing heroin and the other cocaine. Following those discoveries, the defendant was handcuffed, put into the police van, and taken down to the stationhouse. There, when he was instructed to empty his pockets, the bogus money, which is the subject of this case, was found.

Under the applicable standards of federal law, I find that the officers had a reasonable basis for making an investigative stop here. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Adams v. Williams,* 407 U.S. 143, 145–46, 92 S.Ct. 1921,

1922–1923, 32 L.Ed.2d 612, 616–617 (1972); *see also United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Gustafson v. Florida,* 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973). On the basis of the failure to produce a registration, the showing of a Bill of Sale with a different vehicle identification number from that which was on the car, the giving of a fictitious address, and one which was in any event different from the one listed on the license, taken together with the unduly slow, cautious and circuitous driving, the officers clearly had probable cause to arrest the defendant for driving an unregistered vehicle without a valid license. *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, 1890 (1949); *Raffone v. Adams,* 468 F.2d 860 (2d Cir. 1972). They did arrest him and at the stationhouse there took place a constitutionally permissible search incident to the arrest. This search produced the bogus notes and their seizure as evidence against the defendant was therefore lawful.

The motion is denied.

So Ordered.