People v Studstill (2004 NY Slip Op 50663(U))

[*1]

People v Studstill

2004 NY Slip Op 50663(U)

Decided on June 18, 2004

Supreme Court, Bronx County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 18, 2004

Supreme Court, Bronx County
THE PEOPLE OF THE STATE OF NEW YORK
against
LARRY STUDSTILL and CHARLES GREEN, Defendants.
2504/03

Megan Tallmer, J.
Defendants are charged with criminal possession of a controlled substance in the first degree and related charges. Both defendants moved to suppress drugs found in their rental car; defendant Green also moved to suppress currency recovered from his person. A hearing on defendants' motions was held before me on April 1, 2004, at which Sargent Fiorello and Police Officers Stynes and Baumeister testified for the People. Defendants offered no evidence. I find all three officers to be credible and make the following findings of fact and conclusions of law.
The evening of May 9, 2003, Sargent Fiorello, Officers Stynes and Baumesiter and a fourth officer were in an unmarked car on anticrime patrol. The officers were in plainclothes. The anticrime unit's function was to patrol different areas of the Bronx, looking for violent crimes. Sargent Fiorello and Officer Styne had been with the New York City Police Department for 12 years and seven years, respectively. Officer Baumesiter had worked in the anticrime unit for two and a half years.
At approximately 11:00 PM, the police officers approached the intersection of Tiebout Avenue and 181st Street. The area was well lit by street lights. The police were driving south at a low rate of speed when they saw the defendants cross the street in front of the police car to get to their car, which was parked at the curb. Defendant Green was wearing a long white tee shirt that fell between his waist and his knees. From approximately four to five car lengths away, the police observed that defendant Green had an abnormally large bulge in his waist area and appeared to be holding an object under his shirt with both hands. The object was a large, bulky item, approximately eight inches long and about the size of a soccer ball. Knowing the area to be drug-prone, the police believed that defendant Green could be hiding drugs or a weapon under his shirt.
The defendants got into a rental car without using a key. The car legally was parked between two other cars and had no indicia of having been stolen. Defendant Studstill sat in the driver's seat while defendant Green sat in the front passenger seat. As defendants got into their car, the police pulled the patrol car up next to defendant's car. The engine of defendants' car was not on and the car was not moving. The position of the police car was such that it would have been very difficult, but not impossible, for defendants to pull out of their parking space had they [*2]attempted to leave. All four officers got out of their car, with their shields displayed. The police did not draw their guns, use their loudspeaker or put on their siren or turret lights.
Both defendants stepped out of their car without prompting. Defendant Studstill left the driver's side door open. Neither defendant had a bulge and they were not patted down by the police. Before the police asked defendants anything, defendant Studtstill said "How are you doing officer? I have my New York driver's license." Defendant Studstill's shirt was wet and beads of sweat were coming down his face. Defendant Studstill then walked to the back of the car. Officer Stynes asked defendant Studstill where he was from and whose car he was driving. Defendant Studstill informed Officer Stynes that he had driven from Syracuse. Defendant Studstill asked if he could sit down, explaining that he was on Ecstasy and felt faint. He was allowed to sit on the bumper.
While defendants were at the back of the police car, Sargent Fiorello approached the driver's side of defendants' vehicle, the door to which had been left open. He smelled the distinct odor of marijuana coming from the car. Sargent Fiorello observed the interior of the car using his flashlight, but did not enter the car. He then went to the front of the windshield by the registration sticker. Standing on his tiptoes, Sargent Fiorello shone his flashlight inside the car and saw five glassine bags of marijuana in the center console. He proceeded to enter the car through the driver's side door and saw a red jacket on the floor. He opened the jacket and found an opaque plastic bag. Upon opening the plastic bag, Sergeant Fiorello discovered a large quantity of crack cocaine.
Defendants were placed under arrest and taken back to the precinct. When they were searched, $310 was recovered from defendant Green's right pant pocket and $90 from defendant Studstill's right pant pocket.
 CONCLUSIONS OF LAWUnder People v Debour, 40 NY2d 210, 223 (1976), the police have the right to approach an individual on the street to request information when there is some objective credible reason not necessarily indicative of criminality. The Court of Appeals has recognized that this standard also governs the right to approach a parked car. People v. Ocasio, 85 NY2d 982 (1995). Here, the observations by the police of defendant Green carrying a suspicious bulge under his shirt while walking in a drug prone location gave the police the right to pull up to defendants' car. In People v. Reyes, 83 NY2d 945 (1994), for example, the police saw defendant in a drug prone location walking away from a group of men while clutching the inside of his jacket beneath his armpit. The Court of Appeals held that these observations permitted the police to approach defendant with their hands on their holstered guns, yelling "Hey, stop, police." See also People v. Locano, 209 AD2d 278 (1st Dept. 1994) (observation of parked car with Vermont plates in drug prone location justified police approach).
All of the subsequent acts of the police reasonably were related to information gathered as the encounter with the defendants unfolded. See People v. Findlayson, 76 AD2d 670, 675
(2d Dept. 1980). When the police pulled up to defendant's car, defendant Green voluntarily exited the car, leaving the driver's side door open. He offered his driver's license to the police before they asked for it. Defendant Studstill similarly exited the car on his own volition.
Upon detecting the smell of marijuana through the driver's side door, the police appropriately used a flashlight to look into the car through the windshield. See People v. Smith, [*3]157 AD2d 870 (2d Dept.1990). Once the police observed five glassines of marijuana in the front console, there was probable cause to believe the car contained contraband. See People v. Belton, 55 NY2d 49, 55 (1982) (discovery of marijuana-filled envelope on car floor and odor of marijuana gave police reason to believe car might contain other drugs). See also People v. Shabazz, 301 AD2d 412 (1st Dept. 2003) (probable cause to enter car based on recovery of marijuana cigar thrown from car and observation of what appeared to be marijuana on the floor of the car).
Where the police have probable cause to believe there are drugs in a car, they have the right to search the car and any closed containers inside the car, including a jacket. Belton, 55 NY2d at 55; People v. Cruz, ___ AD2d ___, 2004 WL 1070265 (N.Y.A.D. 1st Dept.). This right exists independently of any right to arrest. See People v. Maier, 47 AD2d 344 (1st Dept. 1975) (smell of marijuana emanating from van gave the police probable cause to search the van, independent of probable cause to arrest for traffic violation). See also People v. Guido, 175 AD2d 364 (3d Dept. 1991) (detection of smell of marijuana and observation of partially smoked marijuana cigarette provided probable cause to search car). The search of defendant Green's car and his jacket in this case thus was warranted once the police smelled and observed marijuana. Once the cocaine was found in the jacket, the police had the right to arrest defendants for possession of cocaine and marijuana. The currency in defendants' pockets was found in a search incident to an arrest.
The Court rejects defendants' contention that by pulling up along side of defendants' car, the police effected a seizure required to be supported by reasonable suspicion. There are cases holding that blocking a car may constitute a seizure. See People v. Phillips, 119 AD2d 773
 (2d Dept. 1986) (blocking defendant's parked car by stopping perpendicular to it amounted to a seizure). See also People v. Thurman, 81 AD2d 548 (1st Dept. 1981) (police car backed down a one-way street, impeding defendants' progress after defendants began to exit their parking spot). But see People v. Evans, 175 AD2d 456 (3d Dept. 1991) (driving a police car in front of and perpendicular to parked car was not a stop requiring reasonable suspicion). The Court has found no case however in which a police car has pulled up parallel to a parked car that has its engine off and is not moving.
Absent any controlling appellate authority, the Court looks to the test adopted by the
 Court of Appeals for determining when a seizure has occurred:
[The] standard [is] whether a reasonable person would
have believed , under the circumstances, that the officer's
conduct was a significant limitation on his or her
freedom....That involves consideration of all the facts 
for example, was there a chase; were lights, sirens or
a loudspeaker used; was the officer's gun drawn, was
the individual prevented from moving; how many verbal
commands were given; what was the content and tone
of the commands; how many officers were involved;
where did the encounter take place.
[*4]
People v. Ocasio, 85 NY2d 982, 984 (1995).
Applying this test, the officers' actions here could not have led defendants to believe that their freedom significantly was limited. Defendants had not started their car when the police pulled up next to them. No loudspeaker, lights or sirens were used, the police did not have their guns drawn and no verbal commands were given before the defendants exited their car. Indeed, the fact that defendants got out of their car before being given any direction by the police belies their claim that they felt constrained. Thus, even if defendants' car effectively was blocked by the police car, defendants themselves were free to move. See People v. Harrison, 57 NY2d 470, 475 (1982) (distinguishing between restraint on an individual as opposed to his vehicle). After considering all relevant factors, the Court concludes that the police action in this case did not amount to a stop requiring reasonable suspicion.
For the above reasons, defendants' motions to suppress evidence are denied in their entirety. This constitutes the decision and order of this court.
 ________________________
Dated: June 18, 2004 Megan Tallmer, J.S.C.