### Mario REYES, Plaintiff,

v.

The CITY OF NEW YORK, Detective Martin Campos, Shield # 00176, Detective Victor Cardona, Shield # 00446, Sergeant Brian McAllister, Shield # 3940, Detective Raymond Abreu, Shield # 29825, Detective Connor Pascale, Shield # 7527, Detective Salvador Toro, Shield # 2206, Detective John Talavera, Shield # 7085, Defendants.

No. 11 Civ. 7084(AT).

United States District Court, S.D. New York.

Jan. 16, 2014.

David A. Zelman, Law Office of David A. Zelman, New York, NY, for Plaintiff.

Steven Mark Silverberg, Joseph Anthony Marutollo, New York City Law Department, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

ANALISA TORRES, District Judge:

In this action, Plaintiff, Mario Reyes, alleges civil rights violations under 42 U.S.C. § 1983 and pendent claims under state law against seven police officers and the City of New York (the "Defendants"). Defendants move for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons stated below, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

On April 9, 2011, Plaintiff purchased two glassines of heroin from an unknown person on a public street in Manhattan. Pl. 56.1 ¶ 1; Def. 56.1 ¶ 1. Later, on the corner of 117th Street and Park Avenue, Detective Martin Campos, who was dressed in plain clothes, approached Plaintiff and asked "[w]hat do you got in your pocket?" Reyes Dep. 56:110, Sept. 7, 2012; McAllister Dep. 19:48, Feb. 25, 2013. Plaintiff testified that he did not know Campos was a police officer and that Campos did not identify himself as such. Reyes Dep. 56:20–25, Sept. 7, 2012. Plaintiff thought Campos was a thug. *Id.* at 54:45, 57:1116. Believing that he was about to be robbed, Plaintiff "put [his] hand out and kept a distance." *Id.* at 57:22–25, 61:19–24. Plaintiff then removed the heroin from his pocket with his right hand to safeguard the two bags. *Id.* at 61:3–24.

Campos testified that he approached Plaintiff on the street because Sergeant Cardona had informed Campos that Plaintiff was smoking a PCP cigarette. Campos Dep. 26:17–21, Nov. 13, 2012. According to Campos, he stated, "Stop, police, stop." *Id.* at 34:516. Plaintiff paused for a moment before reaching into his pocket and attempting to swallow the heroin. *Id.* at 27:1824. Plaintiff then allegedly charged Campos and Sergeant McAllister, the officer who accompanied Campos. *Id.* McAllister testified to a similar course of events: the officers identified themselves as police, Plaintiff stopped momentarily, attempted to swallow the heroin, and charged the officers. McAllister Dep. 19:9–10, 20:12–24, Feb. 25, 2013.

After being handcuffed and transported to the 25th Precinct, Plaintiff was strip searched. Def. 56.1 ¶¶ 14–17. During the strip search, a physical struggle ensued. Pl. 56.1 ¶ 20; Def. 56.1 ¶ 20. Plaintiff alleges that various officers assaulted him and denies that he engaged any of the officers in a struggle. Pl. 56.1 ¶¶ 20, 33. Defendants do not contest that there are disputes of material fact surrounding the struggle, which necessitate a trial.[1] Def. Mem. 1. After the struggle, Plaintiff was escorted to Bellevue hospital for medical treatment. Pl. 56.1 ¶¶ 21–23; Def. 56.1 ¶¶ 21–23.

After leaving the hospital, Plaintiff was arraigned in Criminal Court (*Id.* at ¶¶ 24) and charged with tampering with evidence, assault in the second degree, resisting arrest, and criminal possession of a controlled substance in the seventh degree. *Id.* at ¶¶ 25. At arraignment, Plaintiff entered a plea of not guilty. The judge set bail, but Plaintiff was unable to post bail

---

**1.** Specifically, Defendants do not move for summary judgment on Plaintiff's federal excessive force claim against all Defendants other than Abreu and on Plaintiff's state law assault and battery claims against Cardona. Def. Mem. 1.

and was transferred to Rikers Island. *Id.* at ¶¶ 27. Around June 9, 2011, after serving approximately 60 days at Rikers, Plaintiff pleaded guilty to criminal possession of a controlled substance in the seventh degree. *Id.* at ¶¶ 29. Plaintiff was sentenced to time served and was released from custody. *Id.* at ¶¶ 30.

## DISCUSSION

### I. *Standard of Review*

Summary judgment may be granted only if the court concludes that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Feingold v. New York,* 366 F.3d 138, 148 (2d Cir.2004). A dispute is genuine when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those which may affect the outcome of a case. *Id.*

The moving party initially bears the burden of informing the court of the absence of a genuine dispute of material fact by citing to particulars in the record. Fed.R.Civ.P. 56(c); *Celotex,* 477 U.S. at 322–25, 106 S.Ct. 2548; *Koch v. Town of Brattleboro,* 287 F.3d 162, 165 (2d Cir.2002). The movant may satisfy his burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed.R.Civ.P. 56(c)(1)(B). If the non-moving party has the burden of proof on specific issues, the movant may also satisfy his own initial burden by demonstrating that the adverse party cannot produce admissible evidence to support an issue of fact. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *PepsiCo Inc. v. Coca–Cola Co.,* 315 F.3d 101, 105 (2d Cir.2002). In

deciding the motion, the court views the record in the light most favorable to the non-moving party. *Hunter v. Bryant,* 502 U.S. 224, 233, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); *O'Hara v. Weeks Marine, Inc.,* 294 F.3d 55, 61 (2d Cir.2002).

If the moving party meets his initial burden, the burden then shifts to the opposing party to establish a genuine issue of fact. *Beard v. Banks,* 548 U.S. 521, 529, 126 S.Ct. 2572, 165 L.Ed.2d 697 (2006); *Santos v. Murdock,* 243 F.3d 681, 683 (2d Cir.2001). The opposing party may not avoid summary judgment by relying solely on conclusory allegations or denials that are unsupported by factual data. Fed.R.Civ.P. 56(c); *Amaker v. Foley,* 274 F.3d 677, 680–81 (2d Cir.2001). Instead, the opposing party must set forth "specific facts showing there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (internal quotation marks omitted). A nonmoving party demonstrates a "genuine issue for trial" by presenting evidence about a material fact, such that a reasonable jury could return a verdict in his favor. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

### II. *Unlawful Seizure*

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. Before determining whether a search or seizure is unreasonable, courts must find that a search or seizure occurred. "A seizure occurs when (1) a person obeys a police officer's order to stop or (2) a person that does not submit to an officer's show of authority is physically restrained." *United States v. Simmons,* 560 F.3d 98, 105 (2d Cir.2009) (citation omitted). A police officer's order to stop constitutes a seizure "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free

to leave." *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (footnote omitted). "*Mendenhall* establishes that the test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *California v. Hodari D.,* 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). "This objective test allows law enforcement officers to predict the ramifications of their conduct and ensures a uniform application of fourth amendment protection to similarly situated individuals." *United States v. Hooper,* 935 F.2d 484, 491 (2d Cir.1991) (citing *Michigan v. Chesternut,* 486 U.S. 567, 574, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988)). However, "to comply with an order to stop—and thus to become seized—a suspect must do more than halt temporarily; he must submit to police authority, for there is no seizure without actual submission." *United States v. Baldwin,* 496 F.3d 215, 218 (2d Cir.2007) (citation and internal quotation marks omitted).

■ This Court rejects Plaintiff's argument that his momentary pause to retrieve the heroin from his pocket in an effort to conceal it from the approaching officers may be construed as an act of acquiesce to police authority. Whether Plaintiff perceived the plain clothes officers to be thugs or not, his conduct amounts to the opposite of submission; it was an act of resistance. This case is similar to *Baldwin. See Baldwin,* 496 F.3d 215 (2d Cir.2007). In *Baldwin,* police officers pulled over a Chevrolet Impala, which stopped upon hearing the sirens and seeing the overhead lights. *Id.* at 217. But, as the officers approached the car on foot, the car sped away. *Id.* The Second Circuit found that the drivers had not been seized during the stop and held that "to comply with an order to stop—and thus to become seized—a suspect must do more than halt temporarily; he must submit to police authority, for there is no seizure without actual submission." *Id.* at 218 (citation and internal quotation marks omitted). The court stated, "[o]ur ruling is not predicated on the brevity of Baldwin's stop, but on the fact that the stop itself did not constitute submission. In other words, it is the nature of the interaction, and not its length, that matters." *Id.* at 219 (citation omitted). "Whether conduct constitutes submission to police authority will depend, as does much of the Fourth Amendment analysis, on 'the totality of the circumstances—the whole picture.'" *Id.* (citations omitted).

Plaintiff here, like the defendant in *Baldwin,* did not submit to police authority. Based on both officers' accounts, Plaintiff did stop; however, the stop was temporary. Campos Dep. 34:20–21, Nov. 13, 2012 (Q: "How long was he stopped before he charged?" A: "Twenty—approximately 20 seconds"); *Id.* at 27:910 (Q: "My client, Mr. Reyes, did he stop?" A: "Yes. At that moment, yes"). "[H]e was stopped. As soon as we approached like, to speak to him, he reached into his back, like in his back, his buttock area and ... tr[ied] to get what he had in his hand into his mouth." McAllister Dep. 20:16–24, Feb. 25, 2013. Campos' testimony also indicates Plaintiff attempted to destroy the evidence of his crime: "[Plaintiff] reached into his pocket and attempted to swallow heroin. At the same time, he used the wall for momentum and he charged at me ... and Sergeant McAllister." Campos Dep. 27:19–22, Nov. 13, 2012. Plaintiff's attempt to swallow heroin after his momentary stop is no different from the defendant's fleeing after the initial stop in *Baldwin.* Both constitute attempts to 'get

away with' the crime—the antithesis of submission to police authority.

Plaintiff's version of events does not create a genuine issue of material fact regarding whether he submitted to police authority. Plaintiff testified that he pulled out the two bags of heroin and put them in his right hand for safeguarding because he thought he was being robbed. Reyes Dep. 61:3–24, Sept. 7, 2012. Indeed, the fact that Plaintiff "put [his] hand out and kept a distance" demonstrates a defensive posture and confirms he had not submitted to police authority. *Id.* at 57:24–25. No matter who tells the story, Plaintiff was either trying to destroy the heroin or hide and/or keep the heroin from the officers. Thus, given the totality of the circumstances, it cannot be said that he ever submitted to police authority. The officers only seized Plaintiff (by physically restraining him) after they had seen the bags of heroin (giving them probable cause for the arrest).

Accordingly, Defendants' motion for summary judgment on Plaintiff's unlawful seizure claims (Plaintiff's first and second causes of action) is GRANTED.

### III. *Denial of a Right to Fair Trial*

Plaintiff argues that he has been denied the right to a fair trial because the police officers fabricated evidence against him, namely, their allegedly false testimony that he tried to swallow two bags of heroin. Because of their testimony, plaintiff was charged with tampering with evidence (in addition to his other charges: second degree assault, resisting arrest, and criminal possession of a controlled substance in the seventh degree). Pl. 56.1 ¶ 25; Def. 56.1 ¶ 25. Plaintiff was arraigned but did not post bail; he was incarcerated for approximately 60 days. *Id.* ¶¶ 27, 29. The tampering with evidence charge was dropped, and Plaintiff pleaded guilty to the controlled substance charge and was sentenced to time served. *Id.* at ¶¶ 29, 30.

■■■ "The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment." *See Strickland v. Washington,* 466 U.S. 668, 684–85, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Falsification of evidence or other egregious conduct resulting in a denial of a fair trial constitutes a violation of procedural due process. *See Zahrey v. City of New York,* No. 98 Civ. 4546, 2009 WL 1024261, at *7 (S.D.N.Y. Apr. 15, 2009). A denial of the right to a fair trial claim requires a plaintiff to prove that: "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." *Jovanovic v. City of New York,* 486 Fed.Appx. 149, 152 (2d Cir.2012) (citation omitted). The plaintiff bears the burden of showing he "was deprived of a fair trial [and to do so] he has to show that such deprivation was not 'too remote a consequence' of the improper [alleged act]." *Powers v. Coe,* 728 F.2d 97, 105–06 (2d Cir.1984) (citation omitted).

Defendants argue that because Plaintiff pleaded guilty, he cannot possibly have been deprived of a fair trial. However, the Second Circuit has permitted a claim under § 1983 for violation of the right to a fair trial to proceed even where no trial took place. *See Ricciuti v. New York City Transit Authority,* 124 F.3d 123 (2d Cir. 1997). In *Ricciuti,* the charges against the plaintiff were dropped before the trial. *Id.* at 127. Nevertheless, the court let the plaintiff's § 1983 claim for violation of the right to a fair trial proceed. *Id.* at 130. Although "*Ricciuti* appears to be the only case permitting such a claim to proceed even where a trial did not take place, it is

binding precedent" that this Court must follow. *Douglas v. City of New York*, 595 F.Supp.2d 333, 347 (S.D.N.Y.2009) (Chin, J.).

■■■ However, Plaintiff's claim fails for another reason; Plaintiff is unable to show that the purportedly fabricated evidence caused him to suffer a deprivation of liberty. Courts have found that guilty pleas constitute superseding causes that break the causal chain between the purportedly unlawful activity and subsequent incarceration. *See Barmapov v. Barry*, No. 09 Civ 03390, 2011 WL 32371, at *6 (E.D.N.Y. Jan. 5, 2011). Here, the deprivation of liberty has floated even further down the proverbial causal stream from the allegedly fabricated evidence. *See Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 352, 162 N.E. 99 (1928). Plaintiff did not plead guilty to the tampering with evidence charge that the purportedly fabricated evidence created (as it was dropped)—thus, the charge formed no part of his criminal sentence. Plaintiff asks the Court to find that the allegedly fabricated evidence caused his deprivation of liberty because the judge considered the tampering with evidence charge while setting bail (which he was unable to post). Making this logical leap requires the Court to find that: (1) if the tampering with evidence charge was absent, the judge would have set a lower bail; (2) Plaintiff would have been able to post the lower bail; and (3) the judge would have sentenced Plaintiff to less than 60 days (his time-served sentence) had he been able to post the lower bail. Plaintiff has not met his burden of demonstrating the foregoing. Needless to say, the deprivation of liberty here is " 'too remote a consequence' of the improper [alleged act]." *Powers v. Coe*, 728 F.2d 97, 105–06 (2d Cir.1984).

Accordingly, Defendants' motion for summary judgment on Plaintiff's denial of a fair trial claim is GRANTED.

## IV. *Municipal Liability*

### a. *Federal claims—Monell*

■■■ For actions brought pursuant to § 1983, there is no *respondeat superior* liability. *See Monell v. Department of Social Services*, 436 U.S. 658, 693–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Accordingly, in order to establish the liability of a municipality in an action under § 1983 for unconstitutional acts by a municipal employee, a plaintiff must establish that the violation of his constitutional rights resulted from a municipal custom or policy. *See id; Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir.1995). The plaintiff need not show that the municipality had an explicitly stated rule or regulation. *See Villante v. Department of Corrections*, 786 F.2d 516, 519 (2d Cir.1986). Rather, a § 1983 plaintiff injured by a police officer may establish the pertinent custom or policy by showing that the municipality, alerted to the possible use of excessive force or other constitutional violations, exhibited deliberate indifference. *See Fiacco v. City of Rensselaer*, 783 F.2d 319, 328 (2d Cir. 1986). To prove deliberate indifference, the plaintiff must show that the need for more or better supervision to protect against constitutional violations was obvious to the municipality. *See Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Vann*, 72 F.3d at 1049 (citations omitted). " '[W]hether or not the claims ha[ve] validity, the very assertion of a number of such claims put[s] the

City on notice that there [is] a possibility that its police officers ha[ve] used excessive force.'" *Id.* (quoting *Fiacco,* 783 F.2d at 328).

In *Yang Feng Zhao v. City of New York,* 656 F.Supp.2d 375, 397 (S.D.N.Y.2009), the plaintiff offered numerous Civil Complaint Review Board ("CCRB") complaints against the officers to prove deliberate indifference. Despite the existence of the complaints, the court dismissed the plaintiff's *Monell* claim because he offered no "evidence either that the Department, faced with colorable or valid complaints, did not pursue any inquiry or made only such a half-hearted effort as to demonstrate that it was not interested in determining the facts, or that it determined that there was a basis for the complaint and still chose not to act." *Id.*

▮ As in *Yang Feng Zhao,* Plaintiff has failed to establish that the City of New York acted with deliberate indifference. Although Plaintiff has demonstrated CCRB complaints were lodged against several of the officers here, he has not adduced any evidence which shows that the board did not pursue the claims or only made half-hearted efforts in doing so. Indeed, the only evidence plaintiff offers is the fact that "[n]one of the defendant officers recall being disciplined as a result of CCRB force allegations." Pl. Mem. 14–15 (footnote omitted) (citing deposition testimony). A lack of discipline hardly implies a lack of investigation (or a lack of alternative responses, such as officer training or increased supervision), especially where only one of the complaints against all of the officers was "[s]ubstantiated."[2] Zelman Aff. Ex. AA. *See also Thomas v. Roach,* 165 F.3d 137, 145 (2d Cir.1999). Indeed, in almost all of the complaints the officers were "[e]xonerated" or the allegations in the complaint were "[u]nfounded." Zelman Aff. Ex. AA. Plaintiff puts forward no evidence that the CCRB's findings regarding the exonerated or unfounded complaints were inaccurate or lacked proper process and consideration. Because Plaintiff has not demonstrated that "the complaints were followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents," the Court cannot infer deliberate indifference. *Vann,* 72 F.3d at 1049.

Accordingly, Defendants' motion for summary judgment on Plaintiff's *Monell* claims against the City of New York is GRANTED.

### b. *State claims—Respondeat Superior*

The state law claims of excessive force and assault and battery against the City of New York may proceed due to the potential for vicarious liability for the actions of the officers as its employees. *See L.B. v. Town of Chester,* 232 F.Supp.2d 227, 239 (S.D.N.Y.2002) ("Unlike cases brought under § 1983, municipalities may be liable for the common law torts, like false arrest and malicious prosecution, committed by their employees under the doctrine of *respondeat superior* ").

### V. *Defendant Abreu*

▮ Personal involvement of a defendant in a constitutional violation is a prerequisite to an award of damages under § 1983. *Ashcroft v. Iqbal,* 556 U.S. 662, 677, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). A defendant in a § 1983 action may not be liable merely because he holds a high position of authority. *Wright v. Smith,* 21 F.3d 496, 501 (2d

---

**2.** And, "it appears that Abreu did receive a command discipline for" the one instance where the CCRB complaint was substantiat-

ed, even though "he testified that he did not remember the basis for this command discipline." Pl. Mem. 15 n. 2.

Cir.1994). Instead, "each Government official ... is only liable for his ... own misconduct." *Iqbal*, 556 U.S. at 677, 129 S.Ct. 1937. "[W]here the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." *McCoy v. Goord*, 255 F.Supp.2d 233, 258 (S.D.N.Y.2003) (citation and internal quotation marks omitted).

■ Defendants move for summary judgment on all claims against Abreu, arguing that he was not personally involved in the arrest or strip search. As the Court has already concluded there was no constitutional violation during the arrest, the Court will only address the record surrounding the strip search. Plaintiff argues that an issue of fact exists regarding whether Abreu was involved in the strip search because Toro testified that Abreu came into the cell where Plaintiff was being searched after Toro called for help. Toro Dep. 36:21–37:13, Sept. 13, 2012. All of the other officers, including Abreu, did not recall whether Abreu was involved, and Plaintiff's deposition reveals that only "Pit Bull" and the arresting officer were involved in the alleged assault and battery during the strip search. Reyes Dep. 102:7–103:20, Sept. 7, 2012. No reasonable jury could find from the evidence before the Court that Abreu deprived Plaintiff of a constitutional right.

■ Plaintiff argues in the alternative that Abreu could be held liable for a failure to intercede. However, an officer who fails to intercede may be liable for preventable harm caused by the actions of other officers only if he or she observes or has reason to know that those officers violated someone's constitutional rights. *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir.1994). Liability only attaches when,

"(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitution rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean–Laurent v. Wilkinson*, 540 F.Supp.2d 501, 512 (S.D.N.Y.2008) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir.1988)). Plaintiff has failed to adduce any evidence that would create an issue of material fact as to any one of the three elements above.

Accordingly, Defendants' motion for summary judgment on Plaintiff's claims against Abreu is GRANTED.

## VI. *State Law Claims*

■ Plaintiff also brings state law claims of excessive force and assault and battery. Defendants argue that these claims (except the assault and battery charge against Cardona) should be dismissed because Plaintiff failed to comply with the notice of claim requirements under the General Municipal Law. Defendants argue that the notice of claim is deficient as to all of the officers except Cardona because Cardona is the only individual officer named in the notice of claim. *See* Silverberg Decl. Ex. P.

■ "[I]n a federal court, state notice-of-claim statutes apply to state-law claims." *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir.1999) (citations omitted). Under New York law, "[n]o action ... shall be prosecuted or maintained against the city ... or any employee unless notice of claim shall have been made and served upon the city in compliance with section fifty-e of this chapter." N.Y. Gen. Mun. L. § 50–k(6). General Municipal Law § 50–e provides:

The notice shall be in writing, sworn to by or on behalf of the claimant, and shall

set forth: (1) the name and post-office address of each claimant, and of his attorney, if any; (2) the nature of the claim; (3) the time when, the place where and the manner in which the claim arose; and (4) the items of damage or injuries claimed to have been sustained so far as then practicable.

N.Y. Gen. Mun. L. § 50–e. With respect to individual defendants, courts in this district have held that " 'General Municipal Law § 50–e makes unauthorized an action against individuals who have not been named in a notice of claim.' " *DC v. Valley Cent. Sch. Dist.*, No. 09 Civ. 9036, 2011 WL 3480389, at *1 (S.D.N.Y. June 29, 2011) (quoting *Tannenbaum v. City of New York*, 30 A.D.3d 357, 358, 819 N.Y.S.2d 4 (1st Dep't 2006)). *See also Stevens v. City of New York*, No. 10 Civ. 2172, 2012 WL 5862659, at *4 (S.D.N.Y. Nov. 14, 2012).

Plaintiff asks the Court to disregard this district's previous case law requiring individual officers to be named in a notice of claim in light of the Fourth Department's decision in *Goodwin v. Pretorius*, 105 A.D.3d 207, 962 N.Y.S.2d 539 (4th Dep't 2013). Defendants argue that the Court "should adhere to [S.D.N.Y.] precedent" on this issue of state law. Def. Reply Mem. 12. *But see Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (holding that in federal courts, except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state).

In *Goodwin*, the plaintiff sued a county medical center and doctors, but failed to name the individual doctors. *Goodwin*, 105 A.D.3d at 209–10, 962 N.Y.S.2d 539. The *Goodwin* court traced the background of the rule and the language of the statute and held that, although it had been applied in numerous cases, the rule requiring individuals to be named in the notice of claim had no basis in the text of General Municipal Law § 50–e. *Id.* at 210–13, 962 N.Y.S.2d 539. However, contrary precedent from the First Department remains. *See Cleghorne v. City of N.Y.*, 99 A.D.3d 443, 446, 952 N.Y.S.2d 114 (1st Dep't 2012) (citations omitted) ("[T]he action cannot proceed against the individual defendants because they were not named in the notice of claim."). The New York Court of Appeals has not resolved this split between the intermediate appellate courts.

■■■■■ "When the highest state court has not ruled directly on [an] issue presented, a federal court must make its best estimate as to how the state's highest court would rule in the case." *Anderson v. Hedstrom Corp.*, 76 F.Supp.2d 422, 431 (S.D.N.Y.1999) (citing *Francis v. INA Life Ins. Co. of New York*, 809 F.2d 183, 185 (2d Cir.1987)). "[T]he decision of an intermediate state court on a question of state law is binding ... unless [the court] find[s] persuasive evidence that the highest state court would reach a different conclusion." *Entron, Inc. v. Affiliated FM Ins. Co.*, 749 F.2d 127, 132 (2d Cir.1984) (citing *St. Clair v. Eastern Air Lines, Inc.*, 302 F.2d 477, 481 (2d Cir.1962)). In determining how the highest state court would resolve a particular issue, courts can consider all of the resources the highest court of the state could use: a forum state's inferior courts, decisions from sister states, federal decisions, and the general weight and trend of authority. *See Francis v. INA Life Ins. Co. of New York*, 809 F.2d 183, 185 (2d Cir.1987); *Anderson*, 76 F.Supp.2d at 431.

One court in this district has chosen not to follow *Goodwin*, dismissing *Goodwin* with a "But *see* " citation. *See Rodriguez v. Rivera*, No. 12 Civ. 5823, 2013 WL 5544122, at *11 (S.D.N.Y. Sept. 16, 2013). Another court which addressed the split on the issue between the New York appellate

courts decided to follow *Goodwin*. *See Chamberlain v. City of White Plains,* No. 12 Civ. 5142, 986 F.Supp.2d 363, 397-98, 2013 WL 6477334, at *22 (S.D.N.Y. Dec. 10, 2013). The court in *Chamberlain* adopted *Goodwin* because of the opinion's thorough examination of the doctrinal developments regarding the requirement. *Id.* This Court predicts that, for the same reasons articulated in *Chamberlain,* the New York Court of Appeals will likely adopt *Goodwin.* Thus, it is irrelevant that Plaintiff's notice of claim only named Cardona.

Accordingly, Defendants' motion for summary judgment is DENIED on Plaintiff's state law claims against Campos, McAllister, Abreu, Pascale, Toro, and Talavera.

### CONCLUSION

For the reasons stated above, Defendants' motion is GRANTED in part and DENIED in part.

SO ORDERED.