James **TOMPKINS**, Plaintiff,

v.

**CITY OF NEW YORK, Marsha Thomas Knights, John Pace, Carlos Whearty, F/N/U Spruck and John Doe 1, Individually and in their Official Capacities (the name John Doe being fictitious as the true name is presently unknown), Defendants.**

No. 12 CV 7771(VB).

United States District Court, S.D. New York.

Signed Sept. 9, 2014.

Filed Sept. 10, 2014.

---

Michael S. Bank, Bank, Sheer, Servino & Seymour, White Plains, NY, for Plaintiff.

Richard Keith Weingarten, New York City Law Department, Uriel Benjamin Abt, Office of the Corporation Counsel, New York, NY, for Defendants.

### MEMORANDUM DECISION

BRICCETTI, District Judge.

In January 2012, plaintiff James Tompkins was arrested and charged with obstructing governmental administration in the second degree ("OGA") and reckless endangerment in the second degree. Those charges were eventually dismissed. He now brings this action against the City of New York (the "City") and four police officers employed by the City's Department of Environmental Protection (the "DEP")—defendants Marsha Thomas Knights, John Pace, Carlos Whearty, and Charles Spruck (the "Individual Defendants")—asserting constitutional claims under 42 U.S.C. § 1983 ("Section 1983") and common law claims under New York state law.

Defendants have moved for summary judgment. (Doc. # 24). For the following reasons, the motion is GRANTED in part and DENIED in part.

The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367.

### BACKGROUND

The parties have submitted briefs, statements of facts pursuant to Local Civil Rule 56.1, and declarations with supporting exhibits—including videos—which reflect the following factual background.

Plaintiff owns and operates a car repair garage and gas station located on Croton Lake Road in Yorktown Heights, New York. Across Croton Lake Road from the garage is a gate that provides vehicle access to the New Croton Reservoir, one of City's drinking water sources. The Reservoir is guarded by the DEP police, who are responsible for protecting the City's water supply.

On the morning of January 9, 2012, Officer Knights was patrolling the area around the Reservoir. She noticed a van parked on the side of Croton Lake Road, blocking the gate across from the garage. The van belonged to one of the garage's customers, who sometimes park near the gate. Officer Knights had observed vehicles parked in front of the gate before. On those occasions, she had waited by the gate in her patrol car until someone from the garage noticed her and moved the vehicles. Accordingly, on January 9, Officer Knights pulled her patrol car over to the side of the road, a few yards away from the van, and waited for someone from the garage to move the van. That day, it was plaintiff.

Before entering the van, plaintiff approached Officer Knights's car. According to Officer Knights, plaintiff began yelling and cursing at her, saying the DEP was "always bothering him and harassing him" about vehicles parked in front of the gate. (Knights Dep. 85:15–20, 90:1–11). Officer Knights got out of her car and told plaintiff it was illegal to park in front of the gate. They then walked toward the van.

At her deposition, Officer Knights testified she told plaintiff as he was opening the driver's side door, "Do not move the vehicle, I am going to the back of the van to retrieve the [license] plate" information. (*Id.* at 116:2–6; *see also id.* at 92:4–18,

95:19–24, 112:2–9, 134:2–21). Plaintiff denies Officer Knights ever told him not to move the van. (Pl.'s Dep. 86:5–19).

After plaintiff got in the van, Officer Knights began walking along the driver's side of the van toward the rear of the vehicle, which was almost perpendicular to Croton Lake Road. Plaintiff testified he asked Officer Knights, "Are you letting me out?" and she responded by turning back in his direction and waving her left arm toward the road—a gesture plaintiff interpreted as a signal to back up. (*Id.* at 95:20–98:13). Although Officer Knights testified she did not remember making such a gesture (Knights Dep. 137:1–10), a video confirms Officer Knights turned toward plaintiff as she was walking to the rear of the van, raised her left arm, and swung it forward toward the road. (Abt Decl. Ex. K).

After Officer Knights motioned with her left arm, plaintiff began backing up the van into Croton Lake Road. Officer Knights, however, had turned left and was now directly behind the van. As the van was about to hit her, Officer Knights banged on the back of the van until it stopped. She was unharmed. She then yelled to plaintiff, "Are you trying to hit me?" and walked to the driver's side window. (Pl.'s Dep. 98:14–22, 100:15–20). She asked plaintiff for his driver's license and the van's registration. Plaintiff told her his license was in the garage and he could not find the registration. (*Id.* at 100:15–24, 103:21–104:24). Plaintiff then moved the van and walked back to the garage.

As plaintiff was moving the van, Officer Knights called the DEP police's 6th precinct (the "Precinct") and requested back-up because she "wasn't sure [ ] what [plaintiff] was capable of." (Knights Dep. 156:14–17). Sergeant Pace, Officer Whearty, and Officer Spruck were dispatched to the garage. Once they arrived, they entered the garage with Officer Knights.

Inside the garage, Sergeant Pace, who was the other officers' immediate supervisor, began talking to plaintiff "about the gate, parking in front of the gate," and other topics. (Pl.'s Dep. 113:10–14). During this conversation, Officer Knights again asked plaintiff for his driver's license, which he gave to her. She then left, and plaintiff continued speaking with Sergeant Pace.

Officer Knights and Officer Whearty left the garage and called the Precinct supervisor, Lieutenant Miceli, to confirm whether plaintiff should be arrested. Lieutenant Miceli said plaintiff "should be arrested" because he had "tried to run [Officer Knights] over." (Knights Dep. 203:15–204:19). Officer Knights and Officer Whearty then returned to the garage, and Officer Whearty handcuffed plaintiff. Although plaintiff mentioned the handcuffs "were very tight," he was in those handcuffs for "only seconds" before he was taken out of the garage, seated in a police car, and placed in different handcuffs. (Pl.'s Dep. 125:11–24).

Officer Knights then drove plaintiff to the Precinct. They did not speak about plaintiff's arrest or the events leading thereto during the drive. At the Precinct, another DEP police officer—whose identity is still unknown to plaintiff—handcuffed plaintiff by one hand to a "round, circular metal ring which [was] bolted to the wall," while plaintiff sat on a bench below the ring. (*Id.* at 130:1–11). Plaintiff was handcuffed to the wall even though the Precinct's holding cell was unoccupied. According to Sergeant Pace, "[w]e put all our prisoners—we sit down people on the bench. That is what we usually do." (Pace Dep. 104:15–19). Sergeant Pace further testified at his deposition that he had never placed anyone in the Precinct's hold-

ing cell; nor could he remember ever seeing anyone placed in the holding cell. (*Id.* at 104:24–105:6).

Plaintiff was handcuffed to the wall for approximately two hours. He complained three or four times that the handcuffs were too tight. After each complaint, the unidentified officer switched the handcuff from plaintiff's left hand to his right hand, and vice versa. But plaintiff's wrists continued to swell and turn blue. He was later diagnosed with ulnar nerve neuropathy.

Plaintiff was eventually processed and given two desk appearance tickets directing him to appear in Yorktown Justice Court later that month.

Officer Knights filed two misdemeanor informations charging plaintiff with OGA and reckless endangerment in the second degree.

On August 21, 2012, the charges were dismissed.

Plaintiff filed this action on October 18, 2012, and filed an amended complaint on May 6, 2013. (Doc. # 8). Although the amended complaint asserts eighteen claims, plaintiff concedes defendants are entitled to summary judgment on several of those claims. (Pl.'s Mem. at 5–6). Accordingly, the only claims remaining in the case are claims for (i) false arrest under Section 1983 and New York law (as against the Individual Defendants); (ii) failure to intervene and supervisory liability under Section 1983 (as against Sergeant Pace); (iii) malicious prosecution under Section 1983 and New York law (as against the Individual Defendants); (iv) excessive force (as against the Individual Defendants); (v) municipal liability under Section 1983 for excessive force (as against the City); (vi) assault and battery under New York law (as against the Individual Defendants); and (vii) respondeat superior under New York law (as against the City).

## DISCUSSION

### I. *Legal Standard*

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. *See id.* The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Wilson v. Nw. Mut. Ins. Co.,* 625 F.3d 54, 60 (2d Cir.2010) (citation omitted). It is the moving party's burden to establish the absence of any genuine issue of material fact. *Zalaski v. City of Bridgeport Police Dep't,* 613 F.3d 336, 340 (2d Cir.2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. 2548. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249–50, 106 S.Ct. 2505. The

non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir.2011) (internal citations omitted). The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. *Dawson v. Cnty. of Westchester*, 373 F.3d 265, 272 (2d Cir.2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir.2003). If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir.2004). However, when, as here, there is a video of the events in question, courts must "view[ ] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380–81, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

## II. *Federal Claims*

### A. *False Arrest*

Defendants are entitled to summary judgment on plaintiff's false arrest claim under Section 1983 because there was probable cause to arrest plaintiff.

■ "There can be no federal civil rights claim for false arrest where the arresting officer had probable cause." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir.1995). Probable cause exists when the arresting officer has "knowledge or reasonably trustworthy in-

formation sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir.2006) (internal quotation marks omitted).

■ The arresting officer need not have had probable cause to arrest the plaintiff for the specific offense invoked by the officer at the time of the arrest, or the offense with which the plaintiff was charged. *Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004); *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir.2006). As long as there was probable cause to arrest the plaintiff for *any* offense—even a minor traffic violation—a false arrest claim will fail. *Jaegly v. Couch*, 439 F.3d at 150; *United States v. Scopo*, 19 F.3d 777, 781 (2d Cir.1994); *Graham v. City of New York*, 928 F.Supp.2d 610, 616 n. 2 (E.D.N.Y.2013).

■ Here, Officer Knights had probable cause to arrest plaintiff for failing to produce the van's registration, which is a traffic infraction under New York law.

■ Section 401(4) of the New York Vehicle and Traffic Law ("VTL") provides: "Any ... police officer may request that the operator of any motor vehicle produce for inspection the certificate of registration for such vehicle and such operator shall furnish to such ... police officer any information necessary for the identification of such vehicle and its owner." VTL § 401(4). The statute thus *"requires* that a motorist produce, upon demand of a police officer, the automobile registration." *People v. Phillips*, 159 A.D.2d 326, 326, 552 N.Y.S.2d 603 (1st Dep't 1990) (emphasis added); *accord United States v. Barnes*, 443 F.Supp. 137, 141–42 (S.D.N.Y.1977) (same); *United States v. Rosario*, 417 F.Supp. 80, 81–82 (S.D.N.Y.1976) (same). "Failure to provide registration is a traffic

violation." *Graham v. City of New York*, 928 F.Supp.2d at 616; *accord People v. Silvers*, 195 Misc.2d 739, 739, 761 N.Y.S.2d 472 (Mt. Vernon City Ct.2003) (noting defendant was charged with "violating [VTL] § 401(4) for failing to produce registration"); *People v. Branchinelli*, 146 Misc.2d 73, 73, 545 N.Y.S.2d 914 (Nassau Cnty. Dist.Ct.1989) (same).

There is no dispute Officer Knights asked plaintiff for the van's registration and plaintiff was unable to provide it. Accordingly, Officer Knights had probable cause to arrest plaintiff for violating VTL § 401(4). The Court therefore grants the Individual Defendants summary judgment on plaintiff's Section 1983 claim for false arrest.

### B. *Failure to Intervene and Supervisory Liability*

Plaintiff seeks to hold Sergeant Pace liable for failing to prevent his subordinate officers (Officers Knights and Whearty) from arresting plaintiff. (Pl.'s Mem. at 19–20).

■ To be sure, "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir.1994) (internal quotation marks omitted); *see also Colon v. Coughlin*, 58 F.3d 865, 871 (2d Cir.1995) (supervisor may be held liable under Section 1983 for constitutional violation committed by subordinate if supervisor was aware of violation and failed to remedy it or was grossly negligent in supervising subordinate).

■ However, a plaintiff has no failure-to-intervene or supervisory-liability claim unless he establishes a subordinate officer violated his constitutional rights. *Feinberg v. City of New York*, 2004 WL 1824373, at *4 (S.D.N.Y. Aug. 13, 2004) ("If the Court determines that the [subordinate] officer's conduct did not violate a constitutional right, however, the analysis ends."); *Elek v. Inc. Vill. of Monroe*, 815 F.Supp.2d 801, 808 (S.D.N.Y.2011) ("Absent an underlying constitutional violation, there is no cognizable claim for supervisor liability." (internal quotation marks omitted)).

Because plaintiff's claim is premised on Sergeant Pace's alleged failure to prevent plaintiff's arrest, and the Court has held plaintiff's arrest was lawful, the Court grants Sergeant Pace summary judgment on plaintiff's failure-to-intervene and supervisory-liability claims.

### C. *Malicious Prosecution*

■ To prove a malicious prosecution claim under Section 1983, a plaintiff must (i) establish the elements of a malicious prosecution claim under New York law, and (ii) show "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir.2000).

■ Malicious prosecution under New York law requires "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant[s'] actions." *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir.1995). Although lack of probable cause and actual malice are distinct elements, "lack of probable cause generally raises an inference of malice sufficient to withstand summary judgment." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 131 (2d Cir.1997); *accord Rounseville v. Zahl*, 13 F.3d 625, 631 (2d Cir.1994) ("[O]ur conclusion that the lack of probable cause presents a jury

question likewise suggests that the existence of malice cannot be resolved through summary judgment.").

Importantly, while a false arrest claim fails if there was probable cause to arrest the plaintiff for *any* offense, *Devenpeck v. Alford,* 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004), in the malicious prosecution context, there must be probable cause for the offenses *charged.* *Posr v. Doherty,* 944 F.2d 91, 100 (2d Cir.1991).

Qualified immunity is a defense to malicious prosecution claims. *See Betts v. Shearman,* 751 F.3d 78, 83 (2d Cir.2014). A police officer has qualified immunity from a malicious prosecution claim if the officer had "arguable probable cause" to charge the plaintiff with the crimes at issue. *Jean v. Montina,* 412 Fed.Appx. 352, 354 (2d Cir.2011) (summary order). Arguable probable cause to charge exists if there was arguable probable cause to *arrest* the plaintiff for the crimes in question, and no "new information learned subsequent to [the] arrest" made it " 'manifestly unreasonable for the defendant officer to charge the plaintiff with [those crimes]." *Id.* (quoting *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 572 (2d Cir.1996) (brackets omitted)); *see also Johnson v. Constantellis,* 221 Fed.Appx. 48, 50 (2d Cir.2007) (summary order) ("If probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined 'by the discovery of some intervening fact.' " (quoting *Kinzer v. Jackson,* 316 F.3d 139, 144 (2d Cir.2003))).

"Arguable probable cause [to arrest] exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Garcia v. Does,* 764 F.3d 170, 177 (2d Cir.2014) (internal quotation marks omitted). The arguable probable cause standard is "more favorable to the officers" than the ordinary standard used to determine probable cause. *Ackerson v. City of White Plains,* 702 F.3d 15, 21 (2d Cir.2012) (internal quotation marks omitted). Thus, an officer who cannot establish *arguable* probable cause necessarily cannot establish probable cause.

"If there is no dispute as to the material historical facts," the Court must decide the question of qualified immunity as a matter of law. *Zellner v. Summerlin,* 494 F.3d 344, 368 (2d Cir.2007). But "[i]f there are unresolved factual issues which prevent an early disposition of the defense, the jury should decide these issues on special interrogatories." *Lore v. City of Syracuse,* 670 F.3d 127, 162 (2d Cir.2012) (internal quotation marks omitted).

Defendants argue plaintiff cannot prove either the lack-of-probable-cause or malice elements of a malicious prosecution claim, and, in any event, the Individual Defendants have qualified immunity. (Defs.' Mem. at 12–14, 20–23). Because qualified immunity entitles a defendant to summary judgment on a malicious prosecution claim even if a plaintiff can show that probable cause was absent, *Jean v. Montina,* 412 Fed.Appx. at 354, and, *a fortiori,* that defendants acted with malice, *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 131 (2d Cir.1997), the Court will assume plaintiff has satisfied those two elements and will consider whether Officer Knights has qualified immunity.[1]

---

1. Although plaintiff brings his malicious prosecution claims against all defendants (Am. Compl. ¶¶ 65–68, 112–15), only Officer Knights "initiated" criminal proceedings against him. *See Johnston v. Port Auth. of N.Y. & N.J.,* 2011 WL 3235760, at *7

Nothing transpired between the time of plaintiff's arrest and the time he was charged that would alter whether there was probable cause to prosecute him for OGA and reckless endangerment. (*See* Pl.'s Dep. 129:2–10, 130:20–23). Defendants' motion on plaintiff's malicious prosecution claim therefore turns on whether, based on the undisputed facts, "officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause" to arrest plaintiff for OGA and reckless endangerment. *See Jenkins v. City of New York,* 478 F.3d 76, 87 (2d Cir.2007).

■ Defendants contend Officer Knights at least had arguable probable cause to arrest plaintiff for OGA because plaintiff moved the van after Officer Knights told him not to do so, and disobeying a lawful order provides probable cause to make an arrest for OGA. (Def.'s Mem. at 10–11 (discussing *Hutchinson v. City of New York,* 2012 U.S. Dist. LEXIS 150222 (S.D.N.Y. Oct. 16, 2012)); Reply at 4–6 & n. 3).[2] However, plaintiff disputes that Officer Knights told him not to move the van. (Pl.'s Dep. 86:5–19). The facts of this case are therefore readily distinguishable from those in *Hutchinson,* which held there was probable cause to arrest the plaintiff for OGA because he refused to comply with a police officer's directive to cross the street to avoid a crime scene. 2012 U.S. Dist. LEXIS 150222, at *11–12. Unlike plaintiff here, the plaintiff in *Hutchinson* "d[id] not dispute that [the officer] gave this command." *Id.* at *11.

■ Although defendants maintain "the dispositive question is whether Officer Knights was aware of facts that gave her probable cause to believe Plaintiff had disobeyed a command," (Reply at 4) (emphasis omitted), at the summary judgment stage, the only question is whether there is a *genuine dispute* about whether Officer Knights was aware of facts that would give a reasonable officer probable cause to believe plaintiff failed to follow her order not to move the van. In light of plaintiff's testimony denying Officer Knights ever gave such an order, there is a genuine dispute about whether Officer Knights was aware of facts from which a reasonable officer could find probable cause to arrest plaintiff for OGA.

Accordingly, because no reasonable officer could conclude from the *undisputed* facts that plaintiff disobeyed Officer Knights's order not to move the van, Officer Knights is not entitled to summary judgment on plaintiff's malicious prosecution claim to the extent that claim is based on the OGA charge.

Nor can Officer Knights win summary judgment on plaintiff's malicious prosecution claim insofar as it is based on reckless endangerment in the second degree. "A person is guilty of reckless endangerment in the second degree when he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person." N.Y. Pen. L. § 120.20. Plaintiff cannot deny he "engage[d] in conduct which creates a substantial risk of serious physical injury to another person,"

(E.D.N.Y. July 27, 2011) (filing misdemeanor information initiates criminal case). The Court therefore construes plaintiff's malicious prosecution claims as against Officer Knights only.

**2.** "Under New York law, obstructing governmental administration has four elements: (1)

prevention or attempt to prevent (2) a public servant from performing (3) an official function (4) by means of intimidation, force or interference." *Cameron v. City of New York,* 598 F.3d 50, 68 (2d Cir.2010) (internal quotation marks omitted).

as he undisputedly backed up the van while Officer Knights was directly behind it. Thus, the issue is whether Officer Knights had arguable probable cause to believe plaintiff acted recklessly; that is, whether he was "aware of and consciously disregard[ed] a substantial and unjustifiable risk" of causing Officer Knights "serious physical injury."[3] *Id.* § 15.05(3).

■■■ Defendants have failed to point to undisputed facts establishing probable cause to believe plaintiff knew of and consciously disregarded a risk of causing Officer Knights serious physical injury. Certainly, if a jury found Officer Knights ordered plaintiff *not* to move the van so she could retrieve the license plate information from the rear of the vehicle (as Officer Knights testified), and plaintiff backed up the van anyway, there would be arguable probable cause to arrest him for reckless endangerment. Under those facts, plaintiff would have backed up the van despite (at least arguably) knowing Officer Knights would be behind it.

However, plaintiff denies Officer Knights told him not to move the van. (Pl.'s Dep. 86:5–19). Plaintiff also testified that, after he asked Officer Knights, "Are you letting me out?" she turned her body toward him and waved her left arm toward the road, as if to signal to plaintiff he could back up. (*Id.* at 95:20–98:13). Indeed, a video shows Officer Knights walk away from the van and toward the road, turn back in plaintiff's direction, and swing her left arm toward the road. (Abt Decl. Ex. K). Thus, if a jury credited plaintiff's version of the events, no reasonable officer could find probable cause to believe plaintiff was aware of and consciously disregarded a substantial and unjustifiable risk

of causing Officer Knights serious physical injury.

In sum, no reasonable police officer could conclude—based on the Undisputed facts—that probable cause existed to arrest plaintiff for OGA or reckless endangerment. And because no facts establishing probable cause arose between the time of plaintiff's arrest and the time he was charged, the Court cannot hold, at this stage, Officer Knights had arguable probable cause to charge him with OGA and reckless endangerment. Accordingly, the Court denies defendants' motion for summary judgment on plaintiff's malicious prosecution claim under Section 1983.

Because there is a genuine dispute about whether Officer Knights ordered plaintiff not to move the van, the jury must decide in a special interrogatory whether, in fact, Officer Knights ordered plaintiff not to move the van. If the jury finds Officer Knights did *not* give that order, then no reasonable officer could conclude there was probable cause to arrest plaintiff for OGA or reckless endangerment, and Officer Knights would not be entitled to qualified immunity. The jury would then also need to determine whether Officer Knights acted with actual malice. *See Martin v. City of Albany*, 42 N.Y.2d 13, 17, 396 N.Y.S.2d 612, 364 N.E.2d 1304 (1977) ("[A] jury may, *but is not required to,* infer the existence of actual malice from the fact that there was no probable cause to initiate the proceeding." (emphasis added)). If, however, the jury finds Officer Knights *did* order plaintiff not to move the van, then a reasonable officer could conclude probable cause existed to arrest plaintiff for OGA and reckless endangerment, and Officer Knights would be entitled to quali-

---

**3.** " 'Serious physical injury' means physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impair-

ment of health or protracted loss or impairment of the function of any bodily organ." *Id.* § 10.00(10).

fied immunity, thereby defeating plaintiff's malicious prosecution claim.

### D. *Excessive Force*

▮ Plaintiff contends he was subjected to excessive force when he was handcuffed to a ring on the wall at the Precinct.[4] (Pl.'s Mem. at 12–17). But he concedes none of the Individual Defendants handcuffed him to the wall. (*Id.* at 16–17). Nor is there any evidence that plaintiff ever complained to the Individual Defendants about the handcuffs at the Precinct. (*See* Pl.'s Dep. 144:4–8). Plaintiff therefore cannot, as a matter of law, establish an excessive force claim against the Individual Defendants under Section 1983, for "[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (internal quotation marks omitted); *see also Espada v. Schneider*, 522 F.Supp.2d 544, 555 (S.D.N.Y.2007) ("Personal involvement for the purposes of a § 1983 excessive force claim can be shown where a police officer directly participates in [the use of force], or was present during the [incident] with reasonable opportunity to intercede on plaintiff's behalf yet failed to do so.").

▮ Plaintiff tries to salvage his excessive force claim by asserting in his memorandum of law that defendants have refused to identify the officer who handcuffed him to the wall despite plaintiff's repeated requests for the officer's identity, and it therefore would be unfair to deny his claim because of defendants' obstruction. (Pl.'s Mem. at 17). But "legal memoranda ... are not evidence and cannot create issues of fact capable of defeating otherwise valid motion[s] for summary judgment." [5] *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 526 (2d Cir. 1994).

Accordingly, defendants' motion for summary judgment on plaintiff's excessive force claim against the Individual Defendants is granted.

### E. *Municipal Liability*

Plaintiff also seeks to hold the City liable under Section 1983 for excessive force.

▮ A municipality is liable under Section 1983 "when execution of a [municipal] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official

---

4. Defendants ask the Court to disregard plaintiff's excessive force claim against the Individual Defendants, arguing plaintiff did not plead this claim in the amended complaint. (Reply at 8). It is true that the amended complaint does not list excessive force as a separate cause of action. However, Count I asserts a claim under Section 1983 for deprivation of "the rights, privileges and immunities guaranteed ... by the Fourth and Fourteenth Amendments." (Am. Compl. ¶ 52). And the amended complaint alleges (i) "[p]laintiff was subjected to excessive force," (ii) "[p]laintiff was handcuffed to a metal ring attached to a wall in a room at the ... DEP police precinct," and (iii) "[p]laintiff complained that the handcuffs were too tight and, that by being handcuffed to a metal ring on a wall with his arm and hand above his head, he was being caused to suffer pain and injury." (*Id.* ¶¶ 22, 26, 72). Thus, plaintiff adequately pleaded a claim for excessive force. The Court therefore will consider this claim on the merits.

5. Even assuming plaintiff's representation is true, plaintiff was not without a remedy. He could have filed a motion pursuant to Federal Rule of Civil Procedure 37 to compel defendants to identify this officer. Having failed to bring this issue to the Court's attention until months after the close of discovery, plaintiff cannot now rely on alleged discovery violations to defeat defendants' motion for summary judgment.

policy, inflicts the [plaintiff's] injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Thus, a plaintiff must prove a municipal policy was the proximate cause of the constitutional violation about which he complains. *Cash v. Cnty. of Erie*, 654 F.3d 324, 342 (2d Cir.2011); *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir.1985). Showing "a municipal policy ... is itself unconstitutional is always sufficient to establish the necessary causal connection." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 125 (2d Cir.2004).

 The amount of force used by a police officer is excessive, and therefore unconstitutional, "when it is more than is necessary [under] the circumstances." *Bancroft v. City of Mount Vernon*, 672 F.Supp.2d 391, 405 (S.D.N.Y.2009) (citing *Curry v. City of Syracuse*, 316 F.3d 324, 332 (2d Cir.2003) (plaintiff can prevail on excessive force claim "if he is able to show that [defendant] used more force than was necessary to subdue him")). Thus, when deciding whether handcuffing constitutes excessive force, "the handcuffing must be viewed in light of the minimal amount of force necessary to maintain custody of the arrestee." *Graham v. City of New York*, 928 F.Supp.2d 610, 620 (E.D.N.Y.2013) (brackets and internal quotation marks omitted).

 "[G]ranting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of West Hartford*, 361 F.3d at 123.

 Here, plaintiff has offered evidence that the DEP police at the Precinct follow a policy of always handcuffing arrestees to a wall—even when the Precinct's holding cell is unoccupied. (Pace Dep. 104:15–105:6). A reasonable factfinder could conclude this policy requires the officers at the Precinct to use more than "the minimal amount of force necessary to maintain custody of the arrestee." *Graham v. City of New York*, 928 F.Supp.2d at 620.

Accordingly, defendants' motion for summary judgment on plaintiff's municipal liability claim is denied.

### III. *State Law Claims*

Because defendants are not entitled to summary judgment on plaintiff's malicious prosecution and municipal liability claims under Section 1983, the Court retains jurisdiction over plaintiff's pendent claims under New York law. *See* 28 U.S.C. § 1367(a). The Court addresses each such state law claim in turn.

### A. *False Arrest*

Plaintiff's false arrest claim under New York law fails for the same reason as its federal counterpart: there was probable cause to arrest plaintiff for failing to produce the van's registration. *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir.2013) ("[P]robable cause to arrest ... is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." (internal quotation marks omitted)).

Accordingly, the Court grants the Individual Defendants summary judgment on plaintiff's false arrest claim under New York law.

### B. *Malicious Prosecution*

 As explained above, Officer Knights is not entitled to summary judgment on plaintiff's Section 1983 malicious prosecution claim on the basis of qualified immunity. Because the federal qualified immunity analysis "also applies to, and

controls, the qualified immunity questions presented under New York law," Officer Knights lacks qualified immunity from plaintiff's malicious prosecution claim under New York law. *Jones v. Parmley*, 465 F.3d 46, 64 (2d Cir.2006). The Court therefore denies defendants' summary judgment motion on this claim.

### C. *Assault and Battery*

■ New York courts analyze assault and battery claims against police officers using the same standard applicable to excessive force claims under Section 1983. *See Posr v. Doherty*, 944 F.2d 91, 94–95 (2d Cir.1991).

Plaintiff's assault and battery claims fail because none of the Individual Defendants used excessive force against him. As explained above, plaintiff admits none of the Individual Defendants handcuffed him to the wall at the Precinct. (Pl.'s Mem. at 16–17). And although plaintiff testified he told Officer Whearty the handcuffs placed on him at the garage "were very tight," plaintiff admits he was in those handcuffs for "only seconds." (Pl.'s Dep. 125:11–14). Plaintiff therefore does not allege anything other than temporary discomfort from handcuffing performed by one of the Individual Defendants, and such discomfort is not enough to sustain an excessive force claim. *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F.Supp.2d 459, 468 (S.D.N.Y.2008) ("There is a consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort.") (collecting cases).

Accordingly, defendants' motion for summary judgment is granted as to plaintiff's assault and battery claims.

### D. *Respondeat Superior*

■ Unlike Section 1983, New York law permits plaintiffs to hold municipalities vicariously liable for torts committed by employees while acting within the scope of their employment. *Reyes v. City of New York*, 992 F.Supp.2d 290, 299 (S.D.N.Y. 2014); *Holland v. City of Poughkeepsie*, 90 A.D.3d 841, 844, 935 N.Y.S.2d 583 (2d Dep't 2011); *Eckardt v. City of White Plains*, 87 A.D.3d 1049, 1051, 930 N.Y.S.2d 22 (2d Dep't 2011).

There is no dispute the Individual Defendants and the unidentified officer who handcuffed plaintiff to the wall at the Precinct "were employed by the City and acting within the scope of their employment when the incident occurred." (Defs.' Mem. at 27).

Accordingly, because the Court concludes a reasonable jury could find (i) Officer Knights is liable for malicious prosecution, and (ii) handcuffing plaintiff to the wall at the Precinct amounted to excessive force and, therefore, assault and battery under New York law, the Court denies defendants' motion for summary judgment on plaintiff's respondeat superior claim insofar as plaintiff seeks to hold the City liable for those allegedly tortious acts.

### CONCLUSION

Defendants' motion for summary judgment is GRANTED as to plaintiff's claims for (i) false arrest under both Section 1983 and New York law; (ii) failure to intervene and supervisory liability; (iii) excessive force under Section 1983 (as against the Individual Defendants); and (iv) assault and battery under New York law.

Defendants' motion for summary judgment is DENIED as to plaintiff's claims for (i) malicious prosecution under Section 1983 and New York law; (ii) municipal liability under Section 1983 for excessive force; and (iii) respondeat superior under New York law for malicious prosecution and assault and battery.

The Clerk is instructed to terminate the motion. (Doc. # 24).

The parties are directed to submit a joint pretrial order in accordance with the Court's Individual Practices by October 9, 2014.

Counsel are directed to attend a status conference on October 27, 2014, at 9:15 a.m., at which time the Court will schedule a trial date.

SO ORDERED.